# Ambridge Borough, Appellant, *v.* Philadelphia Co. et al.

*Appeals—Equity—Findings of fact.*

1. Findings of fact by a chancellor have the effect of a verdict of a jury and will not be disturbed on appeal where there is evidence to support them.

*Corporations—Holding company—Ownership of stock—Control of company.*

2. The shares of the capital stock of a corporation are essentially distinct and different from the corporate property, and the owner of all the stock of a corporation does not own the corporate property or become entitled to manage or control it.

3. The mere fact that the stockholders in two corporations are the same, or that one corporation exercises a control over the other through ownership of its stock, or through identity of stockholders does not make either the agent of the other, nor does it merge them into one so as to make a contract of one corporation

binding upon the other, where each corporation remains separately organized under a distinct charter.

4. Where there is no fraud, unfair dealing or fraudulent acts, and no question of taxation, a street railway company which owns all the stock of another and separately organized company owning its own property and managed by its own directors, will not be bound by a contract of the latter company for paving a street, and this is the case although the directors of the subsidiary company are employees of the holding company and several of the officers of the holding company are officers of the subsidiary company.

Argued February 3, 1925. Appeal, No. 21, March T., 1925, by plaintiff, from decree of C. P. Beaver Co., March T., 1923, No. 4, dismissing bill in equity, in case of Ambridge Borough v. Philadelphia Company, Pittsburgh & Beaver St. Ry. Co. and Beaver Valley Traction Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Rule for specific performance of contract to pave streets. Before BALDWIN, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed as to Philadelphia Company and Beaver Valley Traction Company. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Thompson Bradshaw,* of *Hice, Morrison, May & Bradshaw,* for appellant.—Our theory of this case does not rest on the mere circumstance that the Phila. Co. owns all the stock of the Pittsburgh & Beaver Co. and Beaver Valley Traction Co. That total stock ownership of itself does not create liability no one denies. What stock ownership gives is the power to control. Liability arises on exercise of that power: Southern Pacific Terminal Co. v. Interstate Commerce Com., 219 U. S. 498; United States v. Lehigh Co., 220 U. S. 257; Kendall v. Klapperthal Co., 202 Pa. 596; S. G. V. Co. v. S. G. V. Co., 264 Pa. 265; Kaufmann v. R. R., 217 Pa. 599; Carrothers v. Phila., 118 Pa. 468; Fleming v. Phila. Co., 234 Pa. 74;

Com. v. Airbrake Co., 251 Pa. 12; Callery's App., 272 Pa. 255.

*Edwin W. Smith,* with him *D. A. Nelson* and *E. P. Griffiths,* for appellees.—The principle deducible from the decided cases is that the courts will disregard the separate corporate entities of the holding company and the company whose stock it owns only in cases where equitable principles or taxation questions are involved, and there is evidence of fraud, bad faith, unfair dealings, commission of an unlawful act and the like on the part of the holding company; there is no such evidence here: Allen v. Phila. Co., 265 Fed. 807; Pullman Car Co. v. Missouri Pacific Co., 115 U. S. 587.

OPINION BY MR. JUSTICE SCHAFFER, March 16, 1925:

The Borough of Ambridge filed this bill in equity against the three defendants in which it prayed a decree requiring specific performance of their alleged duty to repair certain of its streets by repaving the same between the street railway tracks therein and one foot on the outside thereof, conformably to the provisions of an ordinance of the borough, and further, should there be a default in compliance with the decree for specific performance, that an injunction be granted restraining defendants from the operation of street railway lines within the borough.

The learned chancellor who heard the cause entered a decree as requested against the Pittsburgh and Beaver Street Railway Company, directing it to repair the streets in the manner provided by the borough ordinance and, upon its failure so to do, enjoining it from the operation of its street railway lines within the borough. The bill was dismissed as against the two other defendants, Beaver Valley Traction Company and Philadelphia Company. Appeals were taken by plaintiff and by the Pittsburgh and Beaver Street Railway Company; the latter has been discontinued and we have to consider

only the appeal of the borough from the dismissal of its bill as to the two other defendants.

It would seem from appellant's printed and oral arguments that its claim for relief is really directed against the Philadelphia Company and that the Beaver Valley Traction Company is but an incidental party to the litigation. Indeed, appellant's counsel in his brief says that his entire argument goes to the error of the lower court in dismissing the bill as against the Philadelphia Company.

The Pittsburgh and Beaver Street Railway Company was organized for the purpose of operating street railways in certain municipal divisions of Allegheny and Beaver Counties, among them the plaintiff borough. It was formed by the merger of two other companies to which the plaintiff borough had granted consent to operate street railways in certain of its highways, upon condition that they would pave the portion of the streets occupied by their tracks and one foot outside thereof, in like manner as the balance of the streets shall be paved, and maintain the paving. There is no denial that the Pittsburgh and Beaver Street Railway Company is bound by this consent ordinance. It is unable to comply with the terms of the enactment and do the paving because of its financial condition. The Beaver Valley Traction Company was likewise incorporated for the purpose of operating lines of street railway in Beaver and Allegheny Counties. All of the capital stock of the latter company and of the Pittsburgh and Beaver Street Railway Company is owned by the Philadelphia Company, which was organized under the special Act of Assembly of March 22, 1871 (Acts of 1873, P. L. 955), and given very wide powers. It owns all of the capital stock of the street railway lines in and adjacent to the City of Pittsburgh, as well as the capital stocks of many other public utilities in that area.

Appellant's counsel thus phrases his conception of the issue to be decided "We admit that a holding com-

pany owning all the capital stock of a street railway company, ipso facto, is not liable for street paving. Does it become liable when it exercises an admitted power to control and makes the underlying company the instrumentality or adjunct of its business."

As we gather it, the pith of appellant's argument is that whatever the corporate structure may be underlying Philadelphia Company's stock ownership, it actually operates the street railways in plaintiff borough and the Pittsburgh and Beaver Company has so lost its corporate identity in the Philadelphia Company, as an edjunct thereof, that in law the latter is the true and only operator, or, if the corporate entity of the Pittsburgh and Beaver Company cannot be ignored, the Philadelphia Company has joined hands with it in such a way that both are operators and both liable for the paving. The base upon which the argument for the Philadelphia Company's liability therefore is made to stand is that it is an operator in fact. If this base crumbles, the argument falls. The circumstances out of which appellant seeks to construct the base, have for cement the close relations between the two companies. As to this the chancellor said: "The testimony discloses a very close relationship between the three companies, defendants. The actual facts are undisputed; the only difficulty is with respect to the inferences that reasonably may or necessarily must be drawn therefrom."

Appellant relies for its conclusion that the Philadelphia Company actually operates the street railway within its limits upon a showing that the board of directors of all of the Philadelphia Company's underlying companies, including the Pittsburgh and Beaver Company, are composed of its employees, who do not own the qualifying shares standing in their names; that the Philadelphia Company's president and others of its officers are officers of the Pittsburgh and Beaver Company and of all the underlying companies; that the Philadelphia Company has advanced large amounts of capital to the Pitts-

burgh and Beaver Company on open book account, and owns in addition to its stock all outstanding bonds; that the board of directors of the Pittsburgh and Beaver Company meets with great irregularity and only for the purpose of authorizing important contracts; that through one of its subsidiaries, an electric power company, the Philadelphia Company provides the electrical power for operation of the Pittsburgh and Beaver Company; that many important actions affecting the Pittsburgh and Beaver Company were taken by its officers, who are also officers of the Philadelphia Company, without action by the board of directors, and that, generally stated, there is unitary operation and control of all the companies under the dominion of the Philadelphia Company.

The court below found as a fact, upon evidence justifying the finding, that "While the Philadelphia Company owns the stock [of the Pittsburgh and Beaver Company] the lines of street railway [in question] are operated by Pittsburgh and Beaver Street Railway Company as a separate and distinct system." He further found "The operation of street cars in said borough and over Merchant Street under said rights, powers and franchises is by said Pittsburgh and Beaver Street Railway Company, and not by either or both of the other defendants herein, nor by the defendants herein jointly." "Findings of fact by a chancellor have the effect of a verdict of a jury and will not be disturbed on appeal where there is evidence to support them": Glenn v. Trees, 276 Pa. 165; Bangor Silk Knitting Co. v. Wise, 277 Pa. 415; Petry v. Harwood Electric Co., 280 Pa. 142.

We adopt as our own this summing up of the case by the chancellor: "While the Philadelphia Company, by its stock ownership, is in a position to control both the Beaver Valley Traction Company and the Pittsburgh and Beaver Street Railway Company, yet its power is not in law the control itself. Its stock ownership gives it the right and the power to elect directors of its own

choosing, and in this way it is undoubtedly able indirectly to impose its will in matters of management and control; nevertheless, both subsidiary companies own their own property and franchises and their respective boards of directors are in direct management of their affairs. No question of taxation is involved in this case; nor is there any charge of fraud, bad faith, concealment or oppression; the law will therefore not disregard the corporate forms under which these concerns handle their business,......The physical property and the franchise of the Pittsburgh and Beaver line are in its name and owned by that company. The Philadelphia Company, eo nomine, could not dispose of a dollar's worth thereof; nor could it, eo nomine, operate cars over the Pittsburgh and Beaver lines or make any use whatever of the latter's rights and franchises. The Philadelphia Company is no more liable for the incidents pertaining to the operation of the Pittsburgh and Beaver lines than the stockholders of the Philadelphia Company, in whom the control of that company, is of course ultimately lodged."

To sustain its position that the Philadelphia Company is liable for the repaving of the streets, appellant relies upon such cases as Pennsylvania Canal Co. v. Brown, 235 Fed. 669; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498; United States v. Lehigh Valley R. R. Co., 220 U. S. 257; Kendall v. Klapperthal Co., 202 Pa. 596; S. G. V. Co. v. S. G. V. Co., 264 Pa. 265; Hunter v. Baker Motor Vehicle Co., 225 Fed. 1006; Baltimore & Ohio Telegraph Co. v. Interstate Telegraph Co., 54 Fed. 50; and United States v. Reading Co., 253 U. S. 26. These cases have no controlling influence either in authority or reason over the one at bar, because plaintiff failed to show that the Philadelphia Company bore any other relation to the Pittsburgh and Beaver Company than that of a holder of all its capital stock. The testimony established and the court below found that the Philadelphia Company did not operate the other company, but that the latter con-

ducted its own operations. There was no contractual relation of any kind shown between the two.

It is admitted by appellant throughout its printed brief that mere stock ownership is not sufficient to fix the Philadelphia Company with responsibility. We repeat what was said in Monongahela Bridge Co. v. Pittsburgh & Birmingham Traction Co., 196 Pa. 25, 28, for the purpose of bringing attention to the situation growing out of stock ownership: "We have been referred to no authority, and we know of none, that asserts the doctrine that the purchaser of all the shares of the capital stock of a corporation thereby becomes the owner of its property. On the contrary, the principle is well established that the shares of the capital stock of a corporation are essentially distinct and different from the corporate property, and that the owner of all the stock of a corporation does not own the corporate property or become entitled to manage or control it."

In the pending case there is no allegation, much less evidence, of fraud or bad faith, unfair dealing or the commission of unlawful acts on the part of the Philadelphia Company which appeared in some at least of the cases upon which appellant relies, as a very brief summary of them will show. Pennsylvania Canal Co. v. Brown, 235 Fed. 669, turned on the question of bad faith and unfair dealing on the part of a holding company, it being found by the court that the Pennsylvania Railroad Company owned practically all of the stock of the Pennsylvania Canal Company and had guaranteed to purchase interest coupons of the Canal Company in event of default and that the railroad company had caused the affairs of the canal company to be so conducted as to virtually wipe out a sinking fund intended for the payment of interest and retirement of the bonds. In that case, the court said the railroad company "had voluntarily assumed a contractual obligation" in connection with the mortgage and had (p. 680) "created the canal company for its own use, acquired a complete con-

trol over it by acquiring nearly all its stock, organized it by electing officers from its own directorate, participated in the obligation of a mortgage, the advantages of which it conceived and announced, and to the complete terms of which it subscribed, reacquired the pledged properties from time to time as it needed them, through the acts of the two corporations, upon terms fixed by the same men acting as directors for both, with the consent of the trustee of the mortgage who was always a high official of the railroad company or of a subsidiary company and permitted moneys to be diverted from its sinking fund to its own advantage. By this conduct the canal company was made and continued to be merely an adjunct or instrumentality of the railroad company, and, with respect to the bondholders as third persons, the legal fiction of separate corporate responsibility, based upon distinct corporate existence, disappeared." Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, was a case of unlawful preference under the Interstate Commerce Act given by a wharfage company to a shipper. It was held that the wharfage company, all of whose stock was owned by the railroad company, could not escape regulation by the commission on the ground that it was a separate corporate entity, as it was an essential link in a system actually managed and controlled by the railroad company, an interstate carrier. In United States v. Lehigh Valley R. R. Co., 220 U. S. 257, an unlawful act on the part of the holding railroad company was established, a violation of the commodities clause of the Interstate Commerce Act in transporting over its lines coal mined by a coal company which was controlled through stock ownership by the railroad company. In this case, it was said (p. 268), "Facts were averred which tended to establish that there was no distinction in practice between the coal company and the railroad company, the latter using the coal company as a mere device to enable the railroad company to violate the provisions of the commodities clause." The

basis for the action in Kendall v. Klapperthal Co., 202 Pa. 596, was fraud and unfair dealing and the corporations involved were organized for a common purpose. Our view of that case is that it has no bearing whatever on the pending controversy. Allen v. Phila. Co., 265 Fed. 817, involved the relationship between the defendant company and one whose stock it owned. There a bondholder of the United Traction Company sought to hold the Philadelphia Company liable on bonds of the first named company. In disposing of the case, the Circuit Court of Appeals said (p. 820), "The burden in the present case is upon such bondholder of the United to show that in some way the Philadelphia Company has, either (a) by a contract express or implied, assumed responsibility for such bonds, or that the Philadelphia has (b) by some act of omission or commission made it the duty of a chancellor to adjudge it responsible for such debt. ......(p. 82). We are of opinion no such legal consequence followed as a sequence to unitary operation. ......No bad faith, fraud or absence of good faith is asserted." In S. G. V. Co. v. S. G. V. Co., 264 Pa. 265, it was held that because of the relations between two corporations one could not set itself up as a creditor of the other. Hunter v. Baker Motor Vehicle Co., 225 Fed. 1006, was a contest between alleged creditors of a corporation which was dominated and controlled by another corporation. It was there said (p. 1015), "The legal fiction of distinct corporate entity is disregarded, when necessary to do so in order to circumvent fraud." In Baltimore & Ohio Telegraph Co. v. Interstate Telegraph Co., 54 Fed. 50, a judgment creditor of the first telegraph company asserted his claim against a fund realized from the sale of the plant of the second telegraph company which had been received by the railroad company. The court said (p. 52), "The identity in action of the two corporations was complete...... (p. 54) In whatever capacity, and under whatever title it held, two facts are clear: That to the world the Baltimore & Ohio Tele-

graph Company......appeared to be the owner; and in reality it was under the control, management and direction of the Baltimore & Ohio Railroad Company. ......The Baltimore & Ohio Railroad Company, using this control, sold the whole of the property operated, controlled, managed and owned by the Baltimore & Ohio Telegraph Company to the Western Union Telegraph Company, and received and appropriated the proceeds of the sale. Thereupon, the telegraph company became and was totally insolvent. As this telegraph company was a corporation, under the circumstances stated, its property and assets were a trust fund for the payment of all of its creditors......When, therefore, the Baltimore & Ohio Railroad Company took possession of, controlled and appropriated this property and its proceeds, it took them impressed with these trusts, and is bound by them." In United States v. Reading Co., 253 U. S. 26, there was an intercorporate scheme to evade the antitrust act; the court thus summed up the situation (p. 59), "This record clearly shows a group of men selecting the holding company with an 'omnibus' charter and not only investing it by stock control with such complete dominion over two great competing interstate carriers and over two great competing coal companies extensively engaged in interstate commerce in anthracite coal as to bring it, without more, within the condemnation of the Anti-Trust Act, but it also shows that this power of control was actually used." It will be seen from this outline review of the cases upon which appellant relies that they are not applicable to the situation and the facts presented in the instant case.

What was said by the Supreme Court of the United States in Pullman's Palace Car Co. v. Missouri Pacific Railway Co., 115 U. S. 587, has direct appositeness to the situation with which we are here dealing. There the Pullman Company was endeavoring to compel the railway company to haul its cars over certain lines

owned, operated or controlled by lease; the fact also appearing that the Missouri Pacific owned a majority of the stock of the other lines. It was held that the contract of the Pullman Company was inoperative except on the line originally contracted with, the court saying (p. 597), "The Missouri Pacific Company has bought the stock of the St. Louis, Iron Mountain and Southern Company, and has effected a satisfactory election of directors, but this is all. It has all the advantages of a control of the road, but that is not in law the control itself. Practically it may control the company, but the company alone controls its road. In a sense, the stockholders of a corporation own its property, but they are not the managers of its business, or in the immediate control of its affairs. Ordinarily they elect the governing body of the corporation, and that body controls its property......The directors now control the road through their own agents and executive officers, and these agents and officers are in no way under the direction of the Missouri Pacific Company. If they or the directors act contrary to the wishes of the Missouri Pacific Company, that company has no power to prevent it, except by the election, at the proper time and in the proper way, of other directors, or by some judicial proceeding for the protection of its interest as a stockholder. Its rights and its powers are those of a stockholder only. It is not the corporation, in the sense of that term as applied to the management of the corporate business or the control of the corporate property." The language in Pittsburgh & Buffalo Co. v. Duncan, 232 Fed. 584, has pertinence to the case in hand (p. 587), "As respects stock ownership and corporate control: The mere fact that the stockholders in two or more corporations are the same, or that one corporation exercises a control over the other through ownership of its stock, or through identity of its stockholders does not make either the agent of the other, nor does it merge them into one so as to make a contract of one corporation binding upon the

other, where each corporation is separately organized under a distinct charter......True, the legal fiction of distinct corporate existence will be disregarded when necessary to prevent fraud, or when a corporation is so organized and controlled and its affairs so conducted 'as to make it only an adjunct or instrumentality of another corporation.'......But it requires a strong case to induce a court of equity to consider two corporations as one, on account of one owning all the capital stock of the other." In Martin v. Development Co. of America, 240 Fed. 42, 45, the law was thus stated: "A holding corporation has a separate corporate existence and is to be treated as a separate entity unless facts are averred which show that such separate corporate existence is a mere sham or has been used as an instrument for concealing the truth, or where the organization and control are shown to be such as that it is but an instrumentality or adjunct of another corporation." Very recently, in Callery's App., 272 Pa. 255, we had occasion to consider the status of two corporations, one a holding company owning all the stock of the other, and we there said (p. 261), "Holding company is a distinct, corporate entity, as is also subsidiary......Holding company, as its sole stockholder, controls subsidiary; but, to do so, it must use the rights and powers of the latter......through its officers, acting as officers of the refining company, or compelling the latter's officers to obey, it imposes its will on subsidiary. Holding company does this, however, only as sole shareholder; it could impose no liability or legal obligation on the subsidiary except as the individuals who acted were brought somewhere within the limits of the latter's functioning body. The directors of the two companies may be identical, but this would not alter the situation......(p. 262) Holding company's control does not sweep aside the corporate existence of Refining Company; the corporations are just as separate and distinct as though the sole shareholder did not exist......The corporate lines are distinct, and we see no reason

why it is not only legally right but wise to keep them so......A corporation does not lose its corporate identity when its stock is all owned by another corporation."

Under the facts as they appeared before it, and in the light of the governing legal principles, the court below determined the case in the way it should be decided.

The decree is affirmed at appellant's cost.