## WELSBACH ENGINEERING & MANAGEMENT CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8428.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 15, 1943.

Decided Jan. 28, 1944.

Hugh Satterlee, of Washington, D. C. (Francis H. Scheetz and John M. Thompson, both of Philadelphia, Pa., on the brief), for petitioner.

Maryhelen Wigle, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, and JONES, Circuit Judges.

MARIS, Circuit Judge.

This is a petition to review a decision of the Tax Court. The sole question raised is whether that court erred in holding that the taxpayer[1] in computing the surtax upon its undistributed profits for 1936 and 1937 was not entitled to a credit under Section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836. The facts as found by the Tax Court are as follows:

The taxpayer is a Delaware corporation doing business in Pennsylvania, with its principal office in Philadelphia. In 1923 the taxpayer issued and delivered to United Gas Improvement Company (U.G.I.) $2,-400,000 principal amount of collateral trust sinking fund bonds due January 1, 1938, secured by a collateral trust indenture covering all of the taxpayer's assets and properties. By the terms of the indenture the taxpayer was obligated to make annual payments to the trustees under the indenture for purposes of a sinking fund in the sum of $106,000 payable semiannually in equal installments. In 1928 U.G.I. transferred all of the bonds then outstanding, $1,700,000 in principal amount, to American Gas Company, a corporation of New Jersey. American Gas continued to be the owner and holder of the taxpayer's bonds until December 24, 1936. American Gas was a holding company with no office and no organization of its own. Most of its outstanding stock was owned by U.G.I. and by December of 1936 American Gas had become a wholly owned subsidiary of U.G.I.

The taxpayer was indebted to the Chase National Bank of New York in the sum of $250,000. In 1933 the bank demanded payment. The taxpayer entered into negotiations with American Gas for modification of the conditions of the trust indenture and succeeded in obtaining a deferment of the sinking fund payments due in 1934 and the release of certain of its assets from the trust in order that they might be pledged with the bank as security in obtaining an extension of the loan. These negotiations were carried on with the officers of American Gas who were also officers and directors of U.G.I. and the several written agreements were prepared under the direction of general counsel for U.G.I. As a condition to and in consideration for the deferment of the current sinking fund payments and the modification of the trust indenture the taxpayer was required to and did enter into a contract restricting its payments of dividends. This agreement was prepared under the direction of the general counsel of U.G.I., acting for American Gas, and was embodied in a letter addressed to American Gas which read as follows:

> "261 North Broad Street,
> Philadelphia, Penna.,
> January 5, 1934.

The American Gas Company,
  1401 Arch Street,
      Philadelphia, Pa.

Gentlemen:

In consideration of the consent of your Company, as the holder of all of this Company's outstanding Collateral Trust Six Per cent. Fifteen Year Sinking Fund Gold Bonds, to the execution and delivery of the Indenture dated as of December 29, 1933, supplemental to the Indenture dated as of January 1, 1923, from our Company to Fidelity Trust Company securing said bonds, we agree that so long as your Company shall hold any of said bonds that our Company will not, without the prior written consent of your Company, pay any dividends on its capital stock or increase the salaries of its executive officers, either as officers of our Company or of its Subsidiary Companies, above the respective amounts of such salaries on January 1, 1934, as set forth in a list which we have delivered to Mr. W. W. Bodine, Vice-President of your Company, and that the proper amount of depreciation and obsolescence charges to be set aside by our Company and its Subsidiary Companies under the provisions of Section 2 of Article Two of said Indenture dated as of January 1, 1923, as amended by said Supplemental .Indenture, shall be determined annually by agreement with your Company.

> Yours very truly,
> Welsbach Street Illuminating Company,
> By Eugene S. Newbold,
> President."

In December 8, 1936 the stockholders of American Gas voted for its dissolution and on December 24, 1936 all its assets, including the taxpayer's bonds then outstanding in the principal amount of $926,000,

---

[1] Welsbach Street Illuminating Company was the petitioning taxpayer before the Tax Court. At the close of the proceedings in that court its name was changed to Welsbach Engineering and Management Corporation.

were transferred and distributed to U.G.I., the sole stockholder of American Gas.

The Tax Court held that by the express terms of the letter agreement of January 5, 1934 the prohibition against payment of dividends terminated when American Gas ceased to hold the taxpayer's bonds. Since this occurred on December 24, 1936 the contractual restriction respecting the payment of dividends ceased to exist prior to the close of the taxable year 1936 and consequently the credit allowed by Section 26(c) (1) of the Revenue Act of 1936 was not available to the taxpayer for the years 1936 or 1937.

The taxpayer contends that the contract of January 5, 1934 prohibiting the payment of dividends, though ostensibly made with American Gas, was in fact made with U.G.I. Whether the contract was made with American Gas or with U.G.I. is clearly a question of fact. The Tax Court had before it all the evidence as to the intention of the parties, the preliminary negotiations which led up to and culminated in the letter contract of January 5, 1934, the actions of the parties subsequent to that contract and all the surrounding circumstances upon which the taxpayer now relies in this court to sustain its contention that the contract was made with U.G.I. We may not, however, enter into an inquiry as to whether the evidence calls for the finding urged by the taxpayer. The crucial fact, that is, whether the contract was made with U.G.I. or with American Gas, was found by the Tax Court against the taxpayer. Since there is warrant in the record for the court's finding that the contract was made with American Gas that determination is not open in this court. Dobson v. Commissioner, 64 S.Ct. 239.

The taxpayer also contends that even if the contract is held to have been made with American Gas, it must nevertheless be so construed as to continue the prohibition against the payment of dividends by the taxpayer even after the transfer of the bonds by American Gas to U.G.I. It urges that the refusal of the Tax Court to so construe the contract was error.

The construction of a contract, with certain exceptions not here relevant, is a question of law.[2] As such it is subject to our review, since this court is empowered to review and to modify or reverse a decision of the Tax Court if the decision is not in accordance with law.[3] By the express terms of the letter of January 5, 1934 the prohibition against the payment of dividends is to last "so long as your Company shall hold any of said bonds." It is quite clear from the fact that the letter was addressed to "The American Gas Company" and from the context of the letter that when the phrase "your Company" was thus used it was used as a synonym for "your corporation", that is, the legal entity which bore the name The American Gas Company. We see no ambiguity in the letter. Nothing in it calls for or justifies an interpretation of the phrase "your Company" as meaning American Gas and its stockholder U.G.I. to which the bonds would ultimately pass in case American Gas should be dissolved by voluntary corporate action.

We have been referred to no Pennsylvania case[4] and our research has revealed none in which the word "company" describing a corporation was held to refer not only to the legal entity but also to the stockholders, whether one or many.[5]

[2] Brown & Sons Lumber Co. v. L. & N. R. Co., 1937, 299 U.S. 393, 397, 57 S.Ct. 265, 81 L.Ed. 301; Crabb v. Commissioner of Internal Revenue, 5 Cir., 1941, 121 F.2d 1015; Equitable Life Assur. Soc. v. Wells, 6 Cir., 1939, 101 F.2d 608; General Motors Corporation v. Abell, 1 Cir., 1923, 292 F. 922.

[3] 26 U.S.C.A. Int.Rev. Code, § 1141 (c) (1).

[4] The law of Pennsylvania governs the construction of this contract since it was made in Pennsylvania and was to be performed in that state. Restatement, Conflict of Laws §§ 346, 358.

[5] Compare Lewis v. Maysville & B. S. R. Co., Ky.1903, 76 S.W. 526, 527, in which it was held that the word "corporation" as used in the Kentucky constitution and "company, association or corporation" as used in the Kentucky statute refer to the corporation itself as a legal entity and not to the individual stockholders.

In Bridge Co. v. Traction Co., 1900, 196 Pa. 25, 28, 46 A. 99, 101, the court said, "On the contrary, the principle is well established that the shares of the capital stock of a corporation are essentially distinct and different from the corporate property, and that the owner of all the stock of a corporation does not own the corporate property, or become entitled to manage or control it." To the same effect see Ambridge Borough v. Philadelphia Co., 1925, 283 Pa. 5, 12, 129 A. 67, 39 A.L.R. 1064.

In the absence of such a construction it is clear that when the covenant which was entered into with The American Gas Company was stipulated to continue so long as "your Company shall hold any of said bonds" it became a covenant which expired by this express limitation when the corporate entity, American Gas, ceased to hold the bonds. Such is the unambiguous purport of the phrase when read in its proper setting in the letter. The court will not construe a contract in conflict with the plain and accepted meaning of the language used;[6] or add words to a contract the meaning of which is clear;[7] or hold a covenantor beyond his undertaking.[8]

We think the Pennsylvania courts, applying these canons of interpretation, would hold, as did the Tax Court, that the covenant against the payment of dividends by the taxpayer was to continue only so long as American Gas itself owned the taxpayer's bonds. It follows that the Tax Court correctly held that the letter of January 5, 1934 did not constitute a contractual prohibition against the payment of dividends on and after December 24, 1936 when American Gas transferred the bonds to U.G.I.

The decision of the Tax Court is affirmed.

---

[6] Hagarty v. Wm. Akers, Jr., Co., Inc., 1941, 342 Pa. 236, 20 A.2d 317.

[7] B. F. Goodrich Co. v. Wilson, 1940, 337 Pa. 333, 340, 10 A.2d 422, 424.

[8] Loeb v. Ferber, 1943, 346 Pa. 348, 30 A.2d 126.