## Ludington v. Shelley

*Charles J. Ware*, for plaintiff.

*William H. Naugle* and *William H. Dunbar*, for defendant.

SMITH, P. J., November 8, 1954.—This is a motion to take off a compulsory nonsuit. The action is assumpsit. Therein plaintiff, Dwight M. Ludington, seeks to recover from defendant, Guy E. Shelley, $13,303.40. This sum, plaintiff claims, is the balance of a five percent commission which defendant, pursuant to the terms of an alleged oral contract, agreed to pay him for procuring a certain housing subsidy and mortgage loan.

The nonsuit was entered on defendant's motion at the conclusion of plaintiff's case in chief solely on the ground that plaintiff, under his testimony, was precluded by the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as reënacted and amended (63 PS §431 et seq.) from any recovery as a matter of law because his services for defendant were those of a real estate broker and were rendered at a time when plaintiff was not duly licensed by the Department of Public Instruction of this Commonwealth to act as such.

Plaintiff, in his brief, in support of his motion to take off the nonsuit contends:

"1. The plaintiff was a licensed real estate broker during the period February 16, 1950, to March 9, 1951, the period of time when his services were performed. 2. The plaintiff is a litigant excepted from the operations of the Real Estate Brokers Act", and "3. The contract of the plaintiff with the defendant, and the services performed by plaintiff . . . are not within the purview of the Real Estate Brokers Act, being a joint undertaking of the principals".

Insofar as material in the disposition of the instant motion, the issues raised by the amended pleadings and on which the case went to trial were: (1) Did the parties enter into the contract as averred by plaintiff and did plaintiff on his part fully perform thereunder?, and (2) Was plaintiff when rendering the services for which he claimed compensation from defendant a duly licensed real estate broker?[1] No issue was therein raised that, in performing for defendant the services in question, plaintiff was not acting in the capacity of a real estate broker or, as now contended by him, that he was excepted from the provisions of the Real Estate Brokers License Act.

Plaintiff was entitled to go to the jury on the first issue. With respect thereto, the jury under his evidence could properly have found the following facts. For some years prior to 1950, plaintiff was a real

1. Defendant in his answer to the amended complaint, although admitting that plaintiff had rendered certain services for him in connection with the obtaining of the housing subsidy and mortgage loan in question, averred that in so doing plaintiff was his employe at an agreed salary of $80 per week, later raised to $100 per week, and that he had paid plaintiff the sum of $5,000 in full therefor. Therein, defendant further denied that he had entered into the contract as pleaded by plaintiff, or that plaintiff when acting for him was a duly licensed real estate broker.

estate broker primarily interested in real estate construction from the financing point of view with offices at 305-07 Bridge Street, New Cumberland, Cumberland County, Pa., and defendant was a building contractor with offices at 29 South Third Street, Harrisburg, Pa. Plaintiff was familiar with the provisions of the Act of May 20, 1949, P. L. 1633, known as the Housing and Redevelopment Assistance Law (35 PS §1661, et seq.), which act was passed to induce the erection and maintenance of a certain type of rental housing. Under this act, subject to the limitations and upon the terms and conditions therein prescribed, including, inter alia, determination of need therefor and approval of site and plans, the State Planning Board created by the act was authorized to make a capital grant or housing subsidy, not exceeding 35 percent of the cost of the housing project, upon awarding a contract to the successful bidder therefor. Early in 1950 plaintiff approached defendant and interested him in bidding on such a project. Thereupon, on February 16, 1950, an oral contract was entered into between them, wherein defendant agreed so to do, and further agreed that if plaintiff would procure for him, or for a corporation to be organized by him, a capital grant or housing subsidy under the aforesaid act, and a mortgage loan to finance the construction of a rental housing project in New Cumberland, Cumberland County, Pa., defendant would pay plaintiff for such services a commission of five percent of the total amount of the capital grant or housing subsidy and mortgage loan secured by him, with an advance to plaintiff on account of said commission of $80 to $100 per week. Further, under the testimony, the jury could properly have found that plaintiff rendered for defendant in full the services agreed to be performed by him under the aforesaid contract, which services, as summarized by defendant were "to do all

the details, arrange all the plans, carry through the transaction of planning and bringing into being a 35-house rental housing project in New Cumberland"; that plaintiff did secure for New Cumberland Homes, Inc., a limited dividend housing corporation incorporated by defendant under the laws of this Commonwealth, a capital grant or housing subsidy in the amount of $131,068. and also an FHA insured construction mortgage loan from the County Trust Company of Tarrytown, New York, in the amount of $235,000, the proceeds of which financed the land acquisition, development, construction, preoccupancy costs, and completion of the rental housing project, the subject of their contract; and that thereby plaintiff was entitled to receive from defendant for his services a five percent commission of $18,303.40, of which $5,000 had theretofore been paid, leaving a balance due him of $13,303.40.

The nonsuit was granted because the trial judge held as a matter of law that plaintiff was not entitled to go to the jury on the second and only other issue raised by the pleadings, even though thereunder he was entitled to go to the jury on the first issue.[2]

Plaintiff filed five reasons in support of his motion to take off the nonsuit. The first one pressed by him is the third wherein he avers that the trial judge erred "in failing to rule that under all the evidence the plaintiff was a real estate broker, duly licensed under the provisions of the Real Estate Brokers Act".

Plaintiff in advancing this particular contention necessarily admits that his services for defendant

2. The question as to whether plaintiff was a duly licensed real estate broker when rendering the services for defendant, as testified to by him, was one of law to be determined by the court and not one of fact to be determined by the jury: Alford v. Raschiatore, 163 Pa. Superior Ct. 635, 642 (1949).

under the contract testified to by him and whereby
he procured the financing of defendant's housing
project were those of a real estate broker as that term
is defined in section 2 (*a*) of the Real Estate Brokers
License Act, as amended (63 PS §432).[3] Therefore,
the sole question now for consideration is whether
plaintiff was then duly licensed to act as such, since
otherwise he is precluded from any recovery in this
action by reason of the provisions of section 16 of the
Real Estate Brokers License Act, which section pro-
vides (63 PS §446) :

"No action or suit shall be insituted, nor recovery
therein be had, in any court of this Commonwealth,
by any person, . . . for compensation for any act done
or service rendered, the doing or rendering of which
is prohibited under the provisions of this act to others
than licensed real estate brokers, unless such person,
. . . was duly licensed hereunder as real estate broker
at the time of the doing of such act or the rendering
of such service."

Plaintiff's contention here made is predicated upon
the premise that a certificate of registration and a
license to act as a real estate broker at the particular

---

3. This section provides:

"The term 'real estate broker' shall include all persons . . .,
who, for another and for a fee, commission, or other valuable
consideration, shall sell, exchange, purchase, or rent, or shall
negotiate the sale, exchange, purchase or rental, or shall offer or
attempt to negotiate the sale, exchange, purchase, or rental, or shall
hold himself . . . out as engaged in the business of selling, exchang-
ing, purchasing, or renting of any real estate, interest in real
estate, the property of another , . . ., or shall negotiate or offer
or attempt to negotiate a loan, secured or to be secured by mort-
gage or other encumbrance upon or transfer of any such real
estate. . . ." It further provides that the doing of one of the
above-recited acts "shall constitute prima facie evidence that the
person, . . ., so acting or attempting to act, is a real estate broker
within the meaning of this act. . . ."

location or place of business specified in the application therefor, when issued by the Department of Public Instruction to an individual, continues to be and remain in full force and effect until temporarily suspended or permanently revoked by the State Real Estate Commission, even though thereafter the licensee may not annually renew his license or may change his place of business without notifying the department. We cannot so construe the provisions of the Real Estate Brokers License Act (hereinafter sometimes called the act).

Section 6 of the act, as amended (63 PS §436) provides:

". . ., it shall be unlawful for any person, . . . to engage in or carry on the business, or act in the capacity of a real estate broker, . . ., within this Commonwealth, without first obtaining a license as a real estate broker . . . from the department."

Section 7 (b) thereof, as amended (63 PS §437), after setting forth the requirements to obtain a license as a real estate broker, including the filing of an application therefor, provides:

". . . Every such application shall state the name of the person, . . ., and the location of the place or places of business for which such license is desired, *and the license shall expire on the last day of February immediately following the date of issue, unless sooner revoked or suspended by the commission, or renewed annually, as hereinafter described. . . .* (Italics supplied.)

Section 8 therof, as amended (63 PS §438) provides:

"(3) *It shall be the duty of all persons, licensed to practice as a real estate broker . . ., to register annually with the department and pay for each annual registration as a real estate broker, the sum of five dollars ($5.00). . . . Said application for renewal*

*of real estate broker's . . . license, shall be made to the department annually on or before March first of the next succeeding year."* (Italics supplied.)

Section 9 (*a*) of the act, as amended (63 PS §439), requires every person licensed under the provisions thereof "to have and maintain a definite place of business within the Commonwealth, . . ., and where the certificate of registration and the current annual renewal card shall be prominently displayed". This section further provides:

"The said place of business shall be specified in the application for license, and designated in the license, and *no license issued under the authority of this act shall authorize the licensee to transact business from any office other than that designated in the license, unless notice in writing shall be given within ten days to the department of any change of business location, designating the new location of such office,* whereupon the department shall forthwith issue a new license for the new location for the unexpired period without charge. *The change of the specified business location, without notification to the department, shall automatically cancel the license theretofore issued.* Every real estate broker shall display on the outside of his place of business a sign containing the words REAL ESTATE or REALTOR, where such latter title is duly authorized. . . ." (Italics supplied.)

In construing the statutory provisions hereinbefore set forth our appellate courts have uniformly held that under section 16 of the Real Estate Brokers License Act (63 PS §446) no person can recover a commission as a real estate broker unless he was duly licensed to act as such at the time he performed the services and earned his commission for which he claims compensation even though he may actually have been so licensed prior or subsequent to the rendi-

tion thereof: Emerson C. Custis & Company v. Pennsylvania Salt Manufacturing Company, 351 Pa. 148 (1945); Alford v. Raschiatore, 163 Pa. Superior Ct. 635 (1949); Tice v. Easterday, 148 Pa. Superior Ct. 457 (1942); Burns v. Gartzman et ux., 139 Pa. Superior Ct. 453 (1939); Gonnelli, Jr., v. Magazzu, 97 Pa. Superior Ct. 595 (1929); Lessy et al. v. Fletcher, 89 Pa. Superior Ct. 521 (1926).

Thus in Burns v. Gartzman et ux., supra, the Superior Court said, page 457:

"The statutory provision that no person can recover a commission unless he was duly licensed at the time he rendered the services for which he claims compensation is merely declaratory of the principle established by our appellate decisions prior to the approval of the Act of 1929. In Lessy et al. v. Fletcher, 89 Pa. Superior Ct. 521, we reversed a judgment in favor of the plaintiffs (who were claiming a commission alleged to have been earned on a sale of real estate) upon the ground that they were not licensed brokers at the time the commission was earned. They had been licensed for the year 1923 but did not pay the tax or receive a license under the Act of 1907 for 1924 until May 16th of that year. One of the agreed upon facts in that case was that the offer of the owner of the real estate to sell for a designated sum was accepted on January 10, 1924, and the deed delivered on June 8th of that year. We there said, 'The correct test is whether the plaintiffs were licensed at the date upon which they earned their share of the commission by performing the service for which they were employed, i.e., bringing the parties together and consummating the agreement for the sale.' . . ."

Plaintiff further argues that since he has performed the services stipulated, it would be a hardship if defendant were permitted to evade a just obligation, and also that the penalties imposed by section 12 of the

Real Estate Brokers License Act, as reënacted without change (63 PS §442)[4] are intended to be the sole punishment should any person act as a real estate broker at a time when he held no renewal license therefor. Similar contentions were considered and rejected by the Supreme Court in F. F. Bollinger Company v. Widmann Brewing Corporation, 339 Pa. 289 (1940). In so doing, Mr. Justice Barnes, speaking for the court, also said (page 294):

". . . Even before the passage of the Act of May 1, 1929, P. L. 1216, expressly denying recovery of compensation to unlicensed real estate brokers, we held that the contracts of such persons were unenforceable. See Johnson v. Hulings, 103 Pa. 498; Verona v. Schenley Farms Co., 312 Pa. 57, 65-66; Sherman v. Welsh, 87 Pa. Superior Ct. 282. In Luce v. Cook, 227 Pa. 224, we said (p. 225): 'This rule rests upon the theory that since the law prohibits under a penalty the doing of business by unlicensed brokers, contracts providing for the payment of commissions to such persons are opposed to good morals and public policy and cannot be enforced.'"

To the same effect see the Lessy case, supra, wherein the Superior Court in denying recovery to an unlicensed real estate broker said, (page 525):

". . . no one can have the aid of the courts to recover commissions earned between the date of the expiration of one license and the taking out of another more than four months later. . . ."

---

4. This section, in paragraph (a) thereof makes it a misdemeanor for any person to act in the capacity of a real estate broker without a license, or after the suspension or revocation of his license, and in paragraph (b) thereof a summary offense for any holder of a certificate of registration who fails to apply for a renewal of the same on or before the renewal date in each year and who continues the practice of a real estate broker.

Whether or not plaintiff held a license when he earned his commission must be determined upon application of the aforesaid legal principles to the following facts as established by him, which facts for the purpose of the instant motion, must be accepted by us. On February 16, 1950, the date of the contract between the parties, plaintiff was a qualified real estate broker with specified place of business at 305-307 Bridge Street, New Cumberland, Pa., under a renewal license duly issued for the license year beginning March 1, 1949. This license, pursuant to the provisions of the act then in force and effect, expired February 28, 1950, unless theretofore automatically canceled within the license year by reason of a change of plaintiff's "specified business location" without notice of such change to the department as required by section 9(a), supra, of the act. Plaintiff, on February 16, 1950, then abandoned and closed his New Cumberland broker's office and moved to defendant's offices in Harrisburg where he remained until about April 12, 1951, and at which location he at no time maintained or was authorized to maintain an office as a real estate broker. *From March 1, 1950, until February 9, 1951, plaintiff held no renewal license as a real estate broker.* On February 9, 1951, plaintiff renewed his real estate broker's license and was again registered as such at his old New Cumberland address, although he had closed that office on February 16, 1950, and had acquired no new office. This renewal license, if valid, expired February 28, 1951. From March 1, 1951, until April 12, 1951, plaintiff held no license as a real estate broker. However, on the date last mentioned plaintiff again renewed his license with specified place of business at 700-06 Market Square Building, Harrisburg, Pa.

Between March 1, 1950, and February 9, 1951, during which time he neither held a license nor main-

tained an office as a real estate broker, plaintiff acting in such capacity and as agent for defendant and/or his proposed housing corporation, New Cumberland Homes, Inc., actually incorporated August 8, 1950, performed the services for which he had been employed, i.e., securing the required commitments whereby the financing of defendant's 35-house rental housing project in New Cumberland was assured. In so doing within the aforementioned unlicensed period, plaintiff, inter alia, (1) procured an option, subsequently exercised, for the site on which New Cumberland Homes, Inc., thereafter erected the housing project; (2) planned and carried to completion all the details whereby the Governor on July 17, 1950, approved a capital grant or housing subsidy in the amount of $131,068. for the housing project; (3) made application without success to a number of institutions for a conventional type mortgage to complete the financing of the housing project; (4) finally procured on November 9, 1950, and through the New Cumberland National Bank and Trust Company of New Cumberland, Pa., a commitment from FHA for an insured construction mortgage loan for New Cumberland Homes, Inc., then incorporated, in the amount of $235,-000., and thereafter a commitment from the County Trust Company of Tarrytown, N. Y., to take this mortgage. A few days prior to March 9, 1951, New Cumberland Homes, Inc., actually took title to the housing site for which plaintiff had theretofore secured an option. On March 9, 1951, final settlement on the above commitments thus secured by plaintiff while he was an unlicensed broker was made in New York City. At this time 90 percent of the State's capital grant or housing subsidy was paid to the County Trust Company upon the execution and delivery by New Cumberland Homes, Inc., to the company of the

insured construction mortgage loan in the amount of $235,000, as theretofore agreed upon.

From the foregoing, it clearly appears the plaintiff did not, as contended by him, hold a real estate broker's license at the time he earned his commission by procuring the housing subsidy and mortgage loan for New Cumberland Homes, Inc. Therefore, under the well-accepted rule as stated and applied in Burns v. Gartzman et ux., supra, plaintiff is barred from any recovery in this action and the nonsuit was properly entered provided plaintiff's services for defendant were those of a real estate broker as defined in the act, since a person cannot by the simple expedient of a contract remove himself from the all embracing terms of the act: Emerson C. Custis & Company v. Pennsylvania. Salt Manufacturing Company, supra.

Plaintiff, however, in his fourth reason in support of his instant motion — the second one pressed by him — avers that even though he held no license he was entitled to go to the jury because he "was a litigant excepted from the operations of the Real Estate Brokers Act". This contention, although not raised by his pleadings, is predicated on section 2(c) of the act, as amended (63 PS §432(c)). This section provides, inter alia, that the term "real estate broker" shall not "be held to include within the meaning of this act any person, firm, association, partnership or corporation who, as owner, shall perform any of the acts with reference to property owned by them".

To support this contention, we would be required to find that plaintiff was an owner of the property, the title to which was in New Cumberland Homes, Inc. Under the facts and the law applicable thereto, we cannot so find.

Plaintiff's testimony established that he contracted with defendant to procure for him, or for a corporation to be organized by him, a State housing subsidy

and a mortgage loan for a specified purpose and for a specified commission. In order to qualify for this housing subsidy and the mortgage loan, defendant, plaintiff and one Charles C. Kichman incorporated New Cumberland Homes, Inc., with an authorized capital of $10,000 divided into 100 shares of preferred stock of the par value of $1 per share, issued to the State, and 990 shares of common stock of the par value of $10 per share, subscribed by and issued as follows: To defendant, 988 shares; to plaintiff, one share; and to Kichman, one share. The three incorporators were the company's first directors and plaintiff was its first secretary.

The well-settled legal principles here controlling are set forth in the leading case of Monongahela Bridge Company v. Pittsburgh & Birmingham Traction Company, 196 Pa. 25 (1900), wherein the Supreme Court said (page 28):

". . . We have been referred to no authority, and we know of none, that asserts the doctrine that the purchaser of all the shares of the capital stock of a corporation thereby becomes the owner of its property. On the contrary the principle is well established that the shares of the capital stock of a corporation are essentially distinct and different from the corporate property, and that the owner of all the stock of a corporation does not own the corporate property or become entitled to manage or control it. 'A corporation,' says Mr. Cook in his work on Corporations, section 6, 'is an entity, an existence, irrespective of the persons who own all its stock. The fact that one person owns all of the stock does not make him and the corporation one and the same person.' . . . In Bidwell v. Pittsburgh, etc., Pass. Railway Company, 114 Pa. 535, Mr. Justice Clark, delivering the opinion of the court, says: 'The shares in a corporation constitute a species of property entirely distinct from the

corporate property; a shareholder has no distinct and individual title to the moneys or property of the corporation, nor any actual control over it; the shares represent a right to participate in profits only.' "

To the same effect see Goetz's Estate (No. 1), 236 Pa. 630 (1912) ; Ambridge Borough v. Philadelphia Co. et al., 283 Pa. 5 (1925) ; Commonwealth v. Sunbury Converting Works, 286 Pa. 545 (1926) ; Homestead Borough v. Defense Plant Corporation et al., 356 Pa. 500 (1947) ; 13 Am. Jur.: Corporation §6, pp. 157-160.

Again the case of Phelan v. Hilda Gravel Mining Company, 203 Cal. 264, 263 Pac. 520 (1928), is also apposite. Here the State of California had an act defining real estate brokers and salesmen and providing for the licensing of the same. This act likewise excluded an owner from the provisions thereof in transactions relating to the owner's real property. Phelan, a director of the mining company, sued it to recover a commission alleged to be due him under a contract with the company for the sale of its real estate. He held no license as a real estate broker. The lower court refused a recovery and entered judgment in favor of the mining company. The California Supreme Court in affirming the judgment said (pages 268-269) :

". . . We are of the opinion that Phelan was not qualified under the said act regulating real estate agents and brokers to demand a commission as the agent of the corporation. That he may have been clothed with authority to contract for the sale of the corporation's property as its representative or attorney in fact may be conceded, but a delegation of that authority would not immunize him from the provisions of an act which was designed to operate uniformly upon all persons who engage themselves to act as real estate agents or salesmen for compensation. He was not the owner of the corporation real

property by virtue of his office as a director. Neither his office nor his contract converted him into an owner of the corporation's real property within the meaning and intent of the clause of section 2 of said act, which exempts the owner of real property from a compliance with the provisions of said act in cases of sales made by him. A director, who as an individual contracts for the payment of commissions on the sale of the corporation's real property, would not be relieved of any burden that the law imposes upon all persons who engage in a similar service. Appellant was at no time a licensed real estate broker. He cannot, therefore, maintain the action. (Stats. 1919, p. 1252, sec. 20.)''

In view of the foregoing, we find that plaintiff was not an owner of the property of New Cumberland Homes, Inc., within the meaning and intent of section 2(c), supra, of the Real Estate Brokers License Act, and thereby excepted from its provisions merely because he held one share of common stock in the corporation and also was a director and the secretary thereof.

Plaintiff's final position, raised by the fifth reason filed in support of his motion to take off the nonsuit, is that plaintiff and defendant were joint adventurers in the housing project and that, therefore, plaintiff's services in connection therewith were not "activities included within the purview of the Real Estate Brokers Act".

A joint adventure is generally described as an association of persons to carry out a single business enterprise for profit.[5] As a general rule in order to constitute a joint adventure there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to contract, a right to share in

---

5. 48 C. J. S. §1, pp. 801-3.

the profits, and a duty to share in any losses that may be sustained. And whether the parties to a particular contract have thereby created, as between themselves, the relation of joint adventurers depends upon their intentions.[6] Again the mutual rights and liabilities of joint adventurers in respect of their common enterprise are substantially those of partners, and each of them is both principal for himself and agent for his associates within the scope of the enterprise.[7]

There is nothing in plaintiff's testimony from which the jury could be permitted to find that there was any intention on the part of plaintiff and defendant to constitute themselves joint adventurers. Plaintiff's action is founded solely on an alleged breach of an agency contract wherein defendant promised to pay him a commission if, in the capacity of a real estate broker, he performed certain services. It is evident that the essential requirements of a joint venture are not present in the unambiguous oral contract made February 16, 1950, between the parties. Thereunder defendant did not have a joint proprietary interest in the housing project, nor a right of mutual control over the subject matter thereof or of the property engaged therein. Neither did plaintiff share in the profits of the enterprise which, although not conclusive, is an important factor in determining the character of the contract: Waldman v. Shoemaker, 367 Pa. 587, 591-92 (1951), and the authorities there cited.

None of the reasons urged by plaintiff to take off the nonsuit and hereinbefore considered have any merit. Accordingly, we enter the following

*Order*

And now, November 8, 1954, the motion of plaintiff, Dwight M. Ludington, to strike off the compul-

6. 48 C. J. S. §2, pp. 809-16.
7. 48 C. J. S. §5, pp. 823-7.

sory nonsuit entered in the above action is hereby refused.

Kreider, J., did not participate in the disposition of this case.