Tax Review Board, Appellant, *v.* Green, Appellant (et al., Appellant).

Argued November 29, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Louis Kattelman,* Assistant City Solicitor, with him *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for City of Philadelphia.

*J. J. Shestack,* with him *Stuart M. Neely, Fred L. Rosenbloom,* and *Schnader, Harrison, Segal & Lewis,* for taxpayers.

OPINION BY MR. JUSTICE MUSMANNO, January 8, 1963:

Lou Green, first as an individual trader, and then as Lou Green, Inc., conducted an automobile auction business.* He purchased automobiles, had them overhauled and repaired, and then sold them at auction. To learn of and obtain these cars, Green employed per-

---

* Throughout this opinion, Green the individual and Green the corporation will be referred to simply as Green.

sons known as "buyers", who would purchase the cars in the name of Green.

After the purchase of any given car, it would be washed, and otherwise cleaned and repaired so as to render it saleable. Much of this repair and reconditioning work was done at Green's place of business by his own employees; some of it was hired out to independent repair shops, because of lack of facilities at Green's place.

On the business done through the resale of cars, Green filed, as he was required by the Philadelphia mercantile license tax ordinance, tax returns for the years 1955, 1956 and 1957. The mercantile license tax provisions of The Philadelphia Code, Subsection (1) (a) of Section 19-1003, state:

"(1) Every person engaging in any of the following businesses in the City shall, in addition to paying a license fee as herein provided, pay an annual mercantile license tax for the license year 1953 and annually thereafter at the rate set forth: (a) A wholesale dealer or wholesale vendor at the rate of 3 mills on each dollar of the volume of the annual gross volume of business transacted by such person *or, in the alternative, at the option of the wholesale dealer or wholesale vendor, at the rate of 3% of the annual gross volume of business transacted by such person, less the cost of goods and less the cost of labor;*" (Emphasis supplied.)

Green chose the alternative rate, that is, 3% of the annual gross volume of business transacted by him, less the cost of goods and cost of labor. Under the heading "cost of goods," he listed expenses incurred in repairing and reconditioning the cars, whether done at his place or elsewhere. He also included as "cost of labor," the amounts paid to the "buyers."

The City Department of Collections notified Green that these deductions (together with others no longer

relevant) were being disallowed, and that tax deficiencies were being assessed, together with interest and penalties.

Green appealed to the Philadelphia Tax Review Board which, after hearings, disallowed Green's deductions for the amounts paid to buyers and to the independent contractors who reconditioned cars away from his premises. The Court of Common Pleas No. 2 of Philadelphia County, on appeal to it, by Green, held that he was entitled to deduct what was paid to the buyers, even though payable as commissions, stating that "the relationship between appellants and buyers was clearly that of employer and employee, since the employer had the right to select the employee; had the power to remove and discharge him; had the right to direct what work should be done, and the way and the manner in which it should be accomplished. The City's theory that the method of payment of compensation to these buyers negatives the employer-employee status, is obviously untenable. 'The method of payment is not a determining factor in establishing the relationship of the parties.' Blum Unemployment Compensation Case, 163 Pa. Superior Ct. 271, 276 (1948)."

The city appealed to this Court, contending that the Green buyers were "joint venturers or partners," and that, therefore, Green could not deduct what he paid them as commissions as cost of labor.

In *McRoberts v. Phelps*, 391 Pa. 591, this Court said: "To constitute a joint venture certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) *there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction.*"

It is true that the Green buyers were paid $150 per week, drawn against commissions which were computed by subtracting from the sum received upon resale, the original cost of the purchase of the car, the cost of reconditioning the car and one-half the tax payable on the transaction. But this method of payment could not constitute Green and his buyers "joint venturers" since, "there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise." This element was completely lacking here.

Nor, under any line of reasoning could Green and his buyers be regarded as "partners" since there was no evidence that they were co-owners in Green's business. The oft repeated rule is, as stated in *Schuster v. Largman*, 308 Pa. 520, namely, that "The fundamental requisite of a partnership is co-ownership of a business." As held in *Kingsley Clothing Mfg. Co. v. Jacobs*, 344 Pa. 551: "The fact that one is entitled by agreement to a share of the profits of an enterprise does not necessarily constitute him a partner." The Act of March 26, 1915, P. L. 18, part II, §7, 59 P.S. §12, expressly provides: "(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, *but no such inference shall be drawn if such profits were received in payment (b) As wages of an employe . . . .*" (Emphasis supplied)

It is equally incorrect for the City to argue that the Green buyers were independent contractors. In deciding whether one acting for another is a servant or an independent contractor the fact that his compensation is on a commission basis instead of in the form of wages is not a controlling factor. On the other hand, an extremely important consideration is the power of the master to terminate the relationship at any time with or without cause, since that tends strongly to

show that the person employed is not an independent contractor but a servant.

The testimony of one of the buyers for Green, who happened at the time to be the sole buyer employed by Green (though there were periods when Green employed as many as four buyers) leads to only one conclusion and that is he was an employee—not a partner, joint venturer or independent contractor.

The Court properly held that the compensation paid the buyers was compensation paid to employees and a cost of labor.

The City further argued, however, that even if this were so, the compensation was not paid as a cost of "receiving, storing, shipping and delivering" the goods sold, as required under the mercantile license tax law. The City apparently would have us interpret this requirement as limited to compensation paid to such employees as "receiving clerks", etc. We cannot so narrowly and unreasonably construe the word "receiving".

The activities of the buyers in consummating the purchase and effectuating the transfer of possession and delivery in behalf of Green come within the scope of activities designated as "receiving, storing, shipping and delivering."

We now come to the cross-appeal taken by Green from the lower court's disallowance, as a deduction, the amounts paid to independent repairmen for reconditioning cars preparatory to their sale by Green. The lower court held that such charges could not be deducted as "cost of labor" because the amounts were not paid to the taxpayer's own employees, and that they could not be deducted as "cost of goods" since they were not part of the taxpayer's cost in acquiring the car.

This finding brings into play too restricted an interpretation of the phrase "cost of goods." Expendi-

tures necessary to place a product in saleable condition can only be regarded as part of the purchaser's cost of that product. It can reasonably be assumed that the price paid for a car which requires repairs will be less than that for which no repairs are necessary. Therefore, if Green buys a car requiring repairs, the actual cost of acquisition will be low, but the amount involved will not truly reflect the cost of the car because he still will have to pay for repairs. These repairs and reconditioning represent a direct and not indirect cost of the goods. To hold otherwise would be to reward the businessman who has a large establishment and can hire a large staff to repair cars, since the wages of such employees would be deductible as a "cost of labor," and then penalize the man whose establishment is not so large and must hire the services of independent repairmen. In ascertaining the intent of the framers of the ordinance, we can conclude that they did not intend so unreasonable a discrimination and so unfair a procedure. Any doubt about the interpretation must be resolved in favor of the taxpayer and against the taxing authority. (*Equitable Gas Co. v. Pittsburgh Sch. Dist.,* 404 Pa. 321; *Paper Products Co. v. Pittsburgh,* 391 Pa. 87.)

We hold, therefore, that the costs incurred to repair and recondition the automobiles to make them saleable are part of the cost of the goods and deductible by the taxpayer, and that the court below erred in holding otherwise.

Order affirmed in part and reversed in part, as indicated in this opinion.

Mr. Justice COHEN would hold that the costs incurred to repair and recondition the automobiles are not part of the cost of the goods and are not deductible by the taxpayer.