436 F.2d 869
 William R. BEAVERS, Administrator of the Estate of Malcolm
Robert Mason, Deceased,
v.
WEST PENN POWER COMPANY and Bell Telephone Company of
Pennsylvania. v. Robert S. MASON and Irene M. Mason.
Appeal of the BELL TELEPHONE COMPANY OF PENNSYLVANIA, Appellant.
 No. 18339.
 United States Court of Appeals, Third Circuit.
 Argued Nov. 30, 1970.
Decided Jan. 21, 1971.
 
 Donald L. Very, Tucker, Burke, Campbell & Arensberg, Pittsburgh, Pa., (B. A. Karlowitz, Peter J. King, Henry S. Pool, Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., on the brief), for appellant.
 Raymond W. Cromer, Beck, McGinnis & Jarvis, Pittsburgh, Pa. (Robert A. Jarvis, Eugene J. Reinbold, Pittsburgh, Pa., on the brief), for appellee, William R. Beavers.
 Bernard J. McAuley, Wayman, Irvin, Trushel & McAuley, Pittsburgh, Pa., for appellees Mason.
 Before SEITZ, ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal from a judgment entered by the district court on a jury verdict for plaintiff and from an order of the district court denying appellant's motions for a judgment n.o.v., for a new trial, and for an amendment of judgment.
 
 
 2
 Plaintiff, William R. Beavers, Administrator of the Estate of Malcolm R. Mason, commenced a diversity action under the Pennsylvania Survival and Wrongful Death Acts[1] against West Penn Power Company (West Penn) and appellant, Bell Telephone Company of Pennsylvania (Bell). Malcolm R. Mason (decedent), aged ten, was killed when he came into contact with a high tension wire while climbing a tree near the edge of his parents' property. The wire was owned and maintained by West Penn and was, pursuant to the terms of an agreement between the defendants, strung on poles owned by Bell. Plaintiff alleged that West Penn was negligent in maintaining its wires and the poles to which they were attached, in failing to insulate the wires, in failing to notify decedent's parents of a dangerous condition existing on their property, and in failing to exercise the degree of care owing to the public generally. He also alleged that West Penn was a trespasser since its wires were outside the utility easement on the Mason property.
 
 
 3
 Plaintiff claimed that Bell was negligent in failing to properly install, maintain, and/or inspect the telephone poles and the attached wires, in using defective poles, in failing to warn decedent's parents of a dangerous condition existing on their property, and in failing to exercise the degree of care it owed to decedent. He also alleged that Bell was a trespasser since its poles leaned outside the utility easement on the Mason property. Bell denied the allegations of negligence and trespass and claimed that the decedent was guilty of contributory negligence.
 
 
 4
 Bell also filed a third-party complaint against decedent's parents, alleging that they were negligent in the supervision of decedent and in failing to warn West Penn or Bell of an allegedly dangerous condition on the Mason property. Bell claimed that the parents were liable over to it for any sums for which Bell might be liable or, alternatively, that it was entitled to contribution from them. The parents denied Bell's allegations and set up the intra-family tort immunity doctrine as a defense.
 
 
 5
 The trial judge ruled as a matter of law that West Penn and Bell were engaged in a joint venture with regard to the maintenance of the electric transmission line involved and instructed the jury to impute the negligence of Bell or West Penn to the other. In connection with the trespass issue he ruled, contrary to Bell's contention, that Bell's easement was limited to a 10-foot strip upon the Mason property along the northeast boundary line of the property.
 
 
 6
 In answer to special interrogatories the jury found that the negligence of West Penn and Bell and the negligence of the parents caused the death of decedent; that decedent was free from contributory negligence; that the point at which decedent met his death was on his parents' property but more than 10 feet from the northeast boundary line of such property; and that the damages sustained by the estate as a result of the death were $85,000. Judgment in that amount was entered against Bell and West Penn.[2] Judgment in favor of the parents was entered on Bell's third-party complaint. After the denial of its motions Bell appealed. West Penn settled with plaintiff after the entry of the judgment and thus is not a party to the appeal.
 
 
 7
 Bell first asserts that the district court erred in denying its motion for a judgment n.o.v. as to plaintiff's judgment against it. The evidence presented at the trial, which will be discussed hereinafter, demonstrates that it would not be unreasonable for a jury to find that the acts of Bell constituted either a trespass or negligence which proximately caused the death of decedent. Therefore, it was not error for the district court to deny Bell's motion for judgment n.o.v. We now consider whether a new trial is required.
 
 
 8
 Bell assigns as error the ruling of the district court that it and West Penn were engaged in a joint venture in regard to the electric transmission line involved in this case. The court charged the jury that 'because the electric transmission line involved in this case was maintained by the two corporations, they were engaged in a joint venture. And therefore for the purposes of this case and under the evidence in this case, each of them is equally liable for the actions or failure to act of either or both of them.' As a result of this instruction we think it is clear that the jury was permitted to impute the negligence of Bell or West Penn to the other. Was this error?
 
 
 9
 In order to impute negligence under the controlling Pennsylvania law the plaintiff was required to establish a joint venture. Joint venture is an amorphous legal doctrine. It is sometimes said to be an association of parties to engage in a single business enterprise for profit. It may arise from an express contract or may be implied from the acts and conduct of the parties. To constitute a joint venture under Pennsylvania law certain factors are essential: 1) each party must make a contribution of capital, materials, services or knowledge; 2) profits must be shared; and 3) there must be a joint proprietary interest in and right of mutual control over the subject matter of the enterprise. Richardson v. Walsh Constr. Co., 334 F.2d 334 (3d Cir. 1964); McRoberts v. Phelps, 391 Pa. 591, 138 A.2d 439 (1958). What are the facts here?
 
 
 10
 In 1933 Bell entered into an agreement with West Penn by which each was given the right to use the other's poles to string its wires. The agreement was clearly designed to prevent the unsightly and uneconomical duplication of utility poles. Under the agreement, ownership of jointly used poles remained in the original owner as did the exclusive obligation to maintain them. Bell was entitled to reimbursement from West Penn for a share of the maintenance expenses unless the need for maintenance was due to conditions for which Bell alone was responsible. In the instant case, while West Penn was permitted to use Bell's poles in stringing its wire, ownership of the poles remained with Bell. From these provisions of the agreement we are unable to find that Bell and West Penn had a joint proprietary interest in or right of mutual control over the subject matter of their agreement. Consequently, we can find no permissible basis under Pennsylvania law of joint venture for here imputing West Penn's negligence to Bell solely by virtue of the relationship created by their agreement.
 
 
 11
 Plaintiff, citing 29 C.J.S. Electricity 57, at 1130, asserts that 'a present danger caused by present maintenance of wiring in a negligent manner concurring with present negligence of another, both creating the conditions causing the mishap, renders both liable.' Assuming the correctness of the statement of the law, such a rule, absent imputed negligence, still requires proof of independent negligence or trespass and causation on the part of both parties.
 
 
 12
 We conclude that the district court erred when it charged the jury on a theory of joint venture. Since the jury may have here found Bell liable on this erroneous theory,[3] we must of necessity reverse the judgment of the district court against Bell. Because the case must be retried, in the interest of justice we address ourselves to other alleged trial errors.
 
 
 13
 Bell assigns as error the district court's ruling that Bell's easement upon the Mason property was limited to 10 feet along the northeast boundary of the property. The district court submitted the following special interrogatory to the jury: 'Was the point at which Malcolm Mason met his death more than 10 feet from the northeasterly boundary line of the property of Robert S. Mason and Irene M. Mason?' The jury's answer was 'yes.' This interrogatory was presumably submitted to the jury in order to determine whether the location of the electric wire at the time of the accident made Bell and/or West Penn trespassers. The trespass to land issue is important because under Pennsylvania law such a trespasser becomes liable for personal injuries resulting from the trespass whether the injury is proximate or indirect. It matters not whether the trespass resulted from an innocent mistake on the part of the trespasser. Kopka v. Bell Telephone Co., 371 Pa. 444, 91 A.2d 232 (1952). Again we look to the facts.
 
 
 14
 Bell acquired an easement on the Mason property by an agreement executed on December 5, 1941 between William F. Sullivan (grantor) and Bell. This agreement gave Bell the right to maintain its lines and poles upon the grantor's land, then recorded as the Mount Vernon Plan of Lots. The agreement stated that 'the approximate location of said poles and anchors is more fully shown on a plan marked 19137-M. * * *' The plan marked 19137-M shows lot 32, the property in question which was later purchased by the Masons, with the poles and anchors with which we are concerned placed in the corners of the northeast boundary line. The plan shows that one of the poles has two anchors attached to it each extending a distance of 10 feet from the pole to the boundary of the Masons' property.
 
 
 15
 A development plan recorded by Sullivan was also introduced into evidence. This plan specifically shows a 10-foot strip dedicated as an easement for public utilities extending along the northeast boundary of what later became the Masons' property. This plan was recorded prior to the date when Bell entered into the easement agreement with Sullivan. However, the development plan was not incorporated into the plan marked 19137-M, and thus not into the easement agreement. But did the easement agreement create a 10-foot easement? The agreement did not have a 10-foot limitation. In the absence of a definite limitation upon the easement rights acquired, their limits must be determined according to the doctrine of practical construction; hence, under Pennsylvania law, acquiescence in the actual location of the poles and their attached apparatus will define the extent of the easement rights granted. Hogg v. Bailey, 5 Pa.Super. 426, 433 (1897); Pennsylvania Water & Power Co. v. Reigart, 127 Pa.Super. 600, 193 A. 311 (1937); accord, United States ex rel. and for Use of Tennessee Valley Authority v. An Easement & Right of Way, 182 F.Supp. 899, 902 (M.D.Tenn.1960). Thus the actual location of the poles as originally placed in 1941 defined the scope of the original easement. It follows that the district court erred when it formulated one of its special interrogatories to the jury on the basis of its ruling that Bell had a 10-foot easement. Such error was prejudicial to Bell because the evidence, if believed, showed that in 1941 the poles were partly outside the claimed 10-foot easement.
 
 
 16
 The evidence at trial indicates that at some time after the poles were placed on the property one of them tilted so that its top was more than two feet further into the Mason property than when originally located. Since, as has been indicated, the original placement of the poles defined the limits of the easement, the question arises as to whether the leaning of the pole to that extent placed it and the fatal electric wire beyond the ambit of the original easement. We think that if the jury were to accept plaintiff's testimony as to the degree of tilt, it would follow that Bell had exceeded the limits of the original easement. In that case Bell was guilty of a trespass unless it established under Pennsylvania law that the tilt had existed for a sufficient period to create a prescriptive right in that position of its poles. These issues must be resolved by the jury on the new trial of plaintiff's trespass claim.
 
 
 17
 Bell next asserts that the district court erred in denying its motion to amend the judgment in favor of the Masons as third-party defendants. The district court held that Bell was not entitled to contribution from the Masons because, although the Masons were found negligent, Bell was guilty of a tespass and as a trespasser it had commited an illegal act and was thereby precluded from seeking contribution. Since the contribution issue will arise again, we consider the correctness of the district court's ruling.
 
 
 18
 Since the appellate courts of Pennsylvania have not spoken to this question, we must 'predict' the applicable Pennsylvania law. In this connection, we need not review the present status of the Pennsylvania law at length as it is set forth in Cage v. New York Cent. R.R., 276 F.Supp. 778, 788-791 (W.D.Pa.), aff'd per curiam, 386 F.2d 998 (3d Cir. 1967). The court there concluded that Pennsylvania would hold that a tortfeasor found guilty of wanton and willful misconduct could not enforce a right of contribution against one specifically found guilty only of simple negligence in the same accident. The necessary implication of this decision is that Pennsylvania would not automatically grant contribution under its Contribution Act.[4]
 
 
 19
 Would Pennsylvania decide that Bell's actions constituted such wanton misconduct as to require the denial of contribution where the other party is guilty of only simple negligence? The trespass and/or negligence, if found, involved the projection of an inherently and highly dangerous instrumentality,[5] a bare electric wire carrying 4000 volts, through a tree located on private residential property. The record also shows that Bell admitted by way of an answer to an interrogatory that in 1955 it received a report that one of the poles in question was leaning. It presumably did nothing because one of its witnesses testified that a tilt of 2 feet 5 inches at the top of the pole was not excessive. We think this evidence would justify a jury in finding wanton misconduct[6] from the existence of a risk of which Bell must be taken to have been aware and which it disregarded by intentional conduct of an unreasonable character out of a conscious indifference to its consequences. Such a finding would require the district court to deny contribution. We think the district court's ruling on this issue was erroneous because it made the mere fact of trespass, no matter how innocent, the basis for denying contribution.
 
 
 20
 The judgment of the district court on the jury verdict, as against Bell, will be reversed; the judgment of the district court denying Bell's motion for judgment n.o.v. will be affirmed; its judgment denying Bell's motion for a new trial will be reversed and case remanded for a new trial; and its order denying Bell's motion to amend the third-party judgment will be vacated and the matter remanded for proceedings consistent with this opinion.
 
 
 
 [1]
 20 P.S. 320.601, 12 P.S. 1601 et seq. respectively
 
 
 [2]
 Originally the district court awarded $2,575 on behalf of the decedent's parents for funeral and burial expenses under the Wrongful Death Act. On Bell's motion, by amendment, the court struck this portion of the judgment because of the jury's determination, hesitantly accepted by the court, that the decedent's parents were negligent. The parents did not appeal this ruling
 
 
 [3]
 The court submitted the following special interrogatory to the jury based on this charge: 'Was there any negligence on the part of West Penn Power Company and Bell Telephone Company of Pennsylvania which caused the death of Malcolm Mason on April 22, 1965?' The jury's answer was 'yes.'
 
 
 [4]
 We recognize that Brenneis v. Marley, 5 Pa.Dist. and Co.2d 20, 23-25 (1955) appears to hold to the contrary. We feel compelled to follow our court's 'prophecy' as to the Pennsylvania law as found in Cage. To the extent the dictum in Duckworth v. Ford Motor Co., 320 F.2d 130 (3d Cir. 1963) is in conflict with Cage, we consider Cage more compelling. See Fenton v. McCrory Corp., 47 F.R.D. 260 (W.D.Pa.1969)
 
 
 [5]
 See Skoda v. West Penn Power Co., 411 Pa. 323, 191 A.2d 822 (1963); Karam v. Pennsylvania Power & Light Co., 205 Pa.Super. 318, 208 A.2d 876 (1965)
 
 
 [6]
 Evans v. Philadelphia Transp. Co., 418 Pa. 567, 212 A.2d 440 (1965); see Thompson v. Pennsylvania Power Co., 402 F.2d 88 (3d Cir. 1968)