Alfred V. Meitner *v.* State Real Estate Commission.

Argued January 12, 1971, before Judges CRUMLISH, JR., WILKINSON, JR. and MANDERINO, sitting as a panel of three.

428

*Harry A. Rutenberg*, with him *Ronald N. Rutenberg*, and *Rutenberg, Rutenberg, Rutenberg & Rutenberg*, for appellants.

*Steven Kachmar*, Assistant Attorney General, with him *John P. Fernsler*, Deputy Attorney General, and *Fred Speaker*, Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 19, 1971:

Appellant, a licensed real estate broker since 1944, was also Assistant Treasurer of Cayuga Land Co., a Pennsylvania corporation involved in the real estate development known as Cresheim Manor in Philadelphia. Meitner functioned under the name Meitner Company at 6212 Ridge Avenue in Philadelphia. Cayuga Land's offices were located at Northeast Avenue and Red Lion Road in Philadelphia and its sample home was at Cresheim Manor.

The complainants, Williams, in November, 1965, gave One Hundred Dollars in deposit on a lot in Cresheim Manor to appellant's son, Alfred V. Meitner, Jr., who was working at the sample home. The younger Meitner is a licensed real estate salesman with his father and is also Assistant Vice President of Cayuga Land Co. Having made deposit the Williams entered into an agreement of sale with Cayuga Land, the terms

of which called for a One Thousand Dollar deposit which was not to be held in escrow. The balance of Nine Hundred Dollars was tendered by check drawn by a third party which was endorsed at the request of the younger Meitner to Cayuga Land. First Federal Savings and Loan Association subsequently foreclosed its mortgage on the lot in question and Cayuga Land became insolvent and the Williams lost their deposit.

The State Real Estate Commission, after proper hearing, concluded that Meitner had failed to comply with the Real Estate Brokers' License Act of May 1, 1929, P. L. 1216, as amended, 63 P.S. 431 et seq., because he had failed to place the Williams' deposit in escrow. In addition, the Commission held that Meitner's present location and business name did not correspond with his license in violation of Section 9 of the Act and Rule 6.9 of the Commission Rules and Regulations. As a result, Meitner's license was revoked. Meitner, in this appeal, erroneously contends that he was not a broker in the Williams' transaction but that he was merely an officer of the seller corporation.

He also challenges the severity of the Commission's decision. With this we agree.

He contends he was not a broker in this transaction and relies upon his agreement with Cayuga Land Co., the pertinent parts of which follow. He was Assistant Treasurer of the company and as such would receive a percentage of the final profits of the Cresheim Manor project. He was not to receive any commission or remuneration based on any individual sale. A similar arrangement was made with his son. He contends that this insulates him from the Brokers' Act in that he was not a broker nor did he represent himself to be one.

Section 2(a) of the Act defines "real estate brokers" as "all persons, . . . who, for another and for a fee, com-

mission or other valuable consideration, shall sell, . . . or shall negotiate the sale, . . . or shall hold himself out as engaged in the business of selling, . . . any real estate, interest in real estate, the property of another, . . .". Subsection (b) of 2 defines a "real estate salesman" as one employed by a "real estate broker" who performs the functions in 2(a). Finally, subsection 2(c) exempts from the brokership of 2(a) sales of property owned by a broker.

Had Meitner agreed with Cayuga Land to *represent* the company in the sale of its lots for a percentage of the company's profits, there is no doubt that the Act would apply. It is apparent when looking at the agreement that Cayuga Land hoped to obtain the benefit of the Meitners' brokerage expertise while at the same time insulating their transactions from the Brokers' Act. The Cresheim Manor project was not truly intended to be a joint venture between Meitner and the Cayuga Land's investors. Meitner, despite the corporate title accorded him, was essentially no more than the corporation's personal real estate broker.

The courts of this Commonwealth have long held that officers of corporations are not deemed to be the owners of corporate property even to the extent that they are shareholders of the corporation. *Monongahela Bridge Company v. Pittsburgh & Birmingham Traction Co.*, 196 Pa. 25, 46 A. 99 (1900).[1] This principle has been applied to the Brokers' Act in holding that corporate property is not deemed to be the property of the corporation officer-broker for the purpose of the Section 2(c) exemption. *Ludington v. Shelley*, 67 Danph.

---

[1] To the same effect see: *Goetz's Estate (No. 1)*, 236 Pa. 630, 85 A. 65 (1912) ; *Ambridge Borough v. Philadelphia Co.*, 283 Pa. 5, 129 A. 67 (1925) ; *Commonwealth v. Sunbury Converting Works*, 286 Pa. 545, 134 A. 438 (1926) ; *Homestead Borough v. Defense Plant Corp.*, 356 Pa. 500, 52 A. 2d 581 (1947).

164, 175 (1954). Therefore, despite the fact that Meitner was a corporate officer, his sales of corporate real estate were sales of real estate "for another".

We cannot agree with the contention that because appellant was to be compensated by a percentage of the final profits rather than a set fee or a commission based on each transaction, he did not perform his brokerage activities for "valuable consideration". The right to receive a percentage of future profits is without doubt the valuable consideration Meitner bargained for when he agreed to lend the Cayuga Land corporation his brokerage expertise.

Alfred Meitner's sales activities with Cresheim Manor were brokerage activities within the meaning of and therefore subject to the provisions of the Brokers' Act. Likewise, Alfred Meitner, Jr. remained a salesman in the employ of his father notwithstanding his individual corporate capacity. We hold, therefore, that there is ample evidence to support the Commission's conclusion that Meitner was indeed a broker when he dealt with the Williams.

Meitner knew that escrow accounts were not established for sales in Cresheim Manor. Hence, he did not require his son, the salesman, to pay over all deposits to him. Instead, he avoided the true broker concept by having all checks endorsed directly to the credit of Cayuga Land.

These facts show a clear violation of Section 10(a) subsections 5, 11(i) and 11(ii) of the Act which provide:

"The commission . . . shall have the power temporarily to suspend or permanently to revoke licenses . . . when . . . it shall find the holder . . . guilty.

(5) of any failure to account for, or to pay over monies belonging to others, which have come into his . . . possession arising out of a real estate transaction;

or (11) of failure to comply with the following requirement: (i) all deposits . . . accepted by every person . . . . holding a real estate broker's license . . . must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in full amount thereof at the time of the consummation or termination. (ii) Every real estate salesman promptly on receipt by him of a deposit . . . on any transaction in which he is engaged on behalf of his broker-employer, shall pay over the deposit to the real estate broker."

The escrow duties of the broker and salesman cannot be waived by contract. Rule 16.1 of the Rules and Regulations of the Real Estate Commission. The Williams contract with Cayuga Land could not and did not prevent the violations.

The evidence before the Commission also substantiates the findings that Meitner has violated Sections 9(a) and 7(d) of the Act and Rule 6.9 of the Commission by establishing his office at an unauthorized place under an improper name. Appellant has not challenged the verity of these findings.

He does say, however, that, in spite of these violations, the Commission's revocation of his license was a harsh penalty unwarranted by the circumstances. We agree. Section 10 of the Act, which Meitner has violated, is penal in nature, *Trott v. Hild*, 190 Pa. Super. 85, 151 A. 2d 832 (1959), and the Commission can impose suspension or revocation of the license. But the exercise of this discretionary power must be reasonable. If there is a manifest abuse of discretion in the imposition of the penalty, this Court is duty bound to order a reconsideration so that justice will prevail. *State Real Estate Commission v. Campbell*, 85 Dauph. 233, 39 D. & C. 2d 749 (1966).

While Meitner is responsible for the violations by himself and his son,[2] we find that liability in this unique type of operation under the Brokers' Act was perhaps uncertain. These violations could have been the result of an honest belief that escrow accounts were unnecessary. While this does not excuse the violation, it does mitigate it and we cannot agree that this conduct was so fraudulent that it warranted revocation of the license upon which appellant's livelihood depends.

Alfred Meitner has been found guilty of the aforementioned violations of the Real Estate Brokers' License Act and the Rules of the Real Estate Commission, and properly so. Appropriate sanctions or penalties are therefore in order. However, this remedial finding is excessive.

For the foregoing reasons, we enter the following

## ORDER

Now, March 19, 1971, the appeal of Alfred V. Meitner from an adjudication of the State Real Estate Commission is hereby sustained to the extent that this matter is hereby remanded to the State Real Estate Commission for further proceedings, including the taking of further testimony, if necessary, and rendering a further adjudication consistent with this opinion.

---

[2] Section 14 of the Real Estate Brokers' Act, 63 P.S. 444 provides: "No violation of any of the provisions of this act on the part of any real estate salesman, or other employee of any licensed real estate broker, shall be ground for the revocation of the license of the employer of such salesman or employee, unless it shall appear upon the hearing had that such employer had guilty knowledge of such violation. A course of dealing shown to have been followed by such employee shall constitute prima facie evidence of such knowledge upon the part of his employer."

434

CONCURRING AND DISSENTING OPINION BY JUDGE MANDERINO:

I concur with that part of the majority opinion which remands this case to the State Real Estate Commission for revision of the penalty imposed. However, I feel that whatever penalty is imposed should be based solely on the fact that Alfred V. Meitner had an office established at an address and under a name which were not authorized by his real estate broker's license.

I dissent from that portion of the majority opinion which holds that Alfred V. Meitner was in violation of the escrow provisions of the Real Estate Brokers License Act.

It is important to note that Alfred V. Meitner had nothing to do with the transactions involving Paul and Bessie Williams which were alleged to have been the basis for the escrow violations in this case. Meitner at no time dealt personally with the Williams and had nothing to do personally with the transactions that occurred.

The sole basis for holding that Meitner was in violation of escrow provisions of the law is based upon transactions involving the purchase of a lot which occurred between Paul and Bessie Williams and Meitner's son, Alfred V. Meitner, Jr.

Meitner, Jr. was the Assistant Vice President of the Cayuga Land Company, a legally established corporation in the State of Pennsylvania. Paul and Bessie Williams visited the offices of the Cayuga Land Company and there met Meitner, Jr., the Assistant Vice President of the corporation. The corporation owned land and was selling lots to the public. The Williams purchased a lot from the Cayuga Land Company which company was represented by Meitner, Jr., the Assistant Vice President of the corporation. This is usually what happens when a corporation is doing business. Since

a corporation cannot talk it is necessary that an individual—a corporate officer—act for that corporation. Indeed it is impossible for a corporation to do business without being represented by one of its officers or authorized employees.

Cayuga Land Company entered into an agreement with the Williams for the purchase of the lot. The agreement provided that the Williams were to pay One Thousand ($1,000.00) Dollars which was *not* to be held in escrow. There is no law which prevents a corporation from selling lots and entering into an agreement with the purchaser for the payment of One Thousand ($1,000.00) Dollars toward the purchase price, which One Thousand ($1,000.00) Dollars is to be paid immediately to the corporation. This was done in the present case.

Subsequently the Cayuga Land Company became insolvent and the Williams did not receive their property and they lost the One Thousand ($1,000.00) Dollars which they had paid directly to Cayuga Land Company.

It is important to note that everything that Meitner, Jr. did in his relationships and transactions with Paul and Bessie Williams were perfectly legal functions for the officer of a corporation to perform. There is no allegation by anyone, including the State Real Estate Commission, that as an officer of the Cayuga Land Company, Meitner, Jr. broke any civil or criminal law in his relationship to the Williams. There is no allegation of fraud or misrepresentation or lack of consideration or any other such allegation. The Williams were never misled as to with whom they were dealing. The agreement of sale listed the parties as the Williams, as buyers, and Cayuga Land Company, as sellers. This agreement required a deposit of One Thousand ($1,000.00) Dollars which was paid by the Williams, One Hundred ($100.00) Dollars in cash and Nine Hun-

dred ($900.00) Dollars by a check which was endorsed by Mrs. Bessie Williams to Cayuga Land Company. The agreement also made no mention of an escrow account. It should have been absolutely clear to the Williams that they were dealing directly with Cayuga Land Company. Thus, all of Meitner, Jr.'s transactions with the Williams were perfectly legal when performed by the officer of a corporation in relation to land owned by that corporation. We do not have here a case of allegation that buyers of property were handled dishonestly or were hurt by fraudulent misrepresentations about the property or its sale. It can only be concluded that Meitner, Jr., as First Vice President of Cayuga Land Company, dealt fairly and honestly with the Williams in their desire to purchase a lot from the Cayuga Land Company.

It is claimed, however, that Meitner, Jr., because he is the holder of a real estate salesman's license, must be bound twenty-four (24) hours a day, regardless of circumstances, to acting in the capacity of a real estate salesman. It is admitted that Meitner, Jr. held a real estate license and was employed by his father, Meitner, who was a real estate broker. However, he was employed as a real estate salesman at a location entirely separate from the Cayuga Land Company. There are two places of business involved in this case: (1) the offices of the Cayuga Land Company, and (2) the offices of Meitner as a real estate broker. There is no allegation that in any way anything was done to confuse the two offices in the minds of the public. They were physically separate and there was no indication whatsoever within or without the office of the Cayuga Land Company that it was the office of a real estate broker or the office of a real estate salesman.

Thus Meitner, Jr. had two jobs. It is undisputed that he was the Assistant Vice President of the

Cayuga Land Company and worked in their offices as an Assistant Vice President selling property. There is no law which prohibits an individual from holding two or more jobs simultaneously. There is no requirement in the law that one who has legal authority to work as a real estate salesman must work at that job and no other. The law defines a real estate salesman as one who is employed by a broker to sell real estate. Meitner, Jr. was not employed and was receiving no payment from his father for his work at the Cayuga Land Company. There is no allegation or proof that Meitner, the real estate broker, was employing his son to sit in an entirely different office of a different company, namely the Cayuga Land Company, to perform services. Meitner, Jr. was to receive nothing from his father for any of the activities and work which he performed at the Cayuga Land Company. We find it impossible to see how Meitner, Jr. could be held to be employed by his father, a real estate broker, when he was outside of his father's broker's office at an entirely different corporate office working as an officer of that corporation in selling lots to the public.

It is claimed that Meitner, Jr., as Assistant Vice President of Cayuga Land Company, did not receive a salary but was to be paid at a later date depending upon what profit the corporation made. Somehow this is supposed to be employment by a real estate broker. We fail to see how this can be so. If the Cayuga Land Company made profits on the sale and construction activities, Meitner, Jr. might receive a commission. But this commission was not coming from any licensed real estate broker who employed him to sell property; it was coming from the corporation which had hired Meitner, Jr. as Assistant Vice President to work in its offices selling its lots to the public.

We repeat that there were absolutely no manifestations of any kind to the public or to the Williams that

indicated that Meitner, Jr. was doing anything other than acting as First Vice President of Cayuga Land Company in its offices. There is nothing in the record that indicates that the Williams even knew that Meitner, Jr. was a real estate salesman in another business, at another location and worked there at other times. There is nothing in the record to indicate that the Williams even knew that Meitner, Jr.'s father was a real estate broker and did have a real estate business at another location in a different place. The State Real Estate Commission also pointed to the fact that Meitner, Sr. was also an officer of the Cayuga Land Company. Meitner, Sr. was the Assistant Treasurer of that company. We fail to see how this changes the situation at all. There is nothing illegal about a real estate broker serving as Assistant Treasurer of a separate corporation.

The essence of this entire matter is that simply because a person holds a real estate salesman's license does not mean that he is barred at all times that he is holding the license from accepting any other employment or doing anything else during the twenty-four (24) hours of his day.

There are other violations which have been charged against Meitner by the Commission; namely, that he had an office established at an unauthorized place and under an improper name. These alleged violations are merely that Meitner was operating his office under the name of Meitner Company when he was licensed to do business under the name of Alfred V. Meitner, and that he was operating his business at an address different from the one authorized on his license. It is inconceivable that the Commission would revoke a license on the basis of such nominal violations.

I, too, would remand this case to the State Real Estate Commission for a revision of the penalty imposed.

However, I disagree with the majority's conclusion that Meitner, Jr. was acting as a real estate salesman in this particular transaction. Thus, in my opinion, any penalty imposed on Meitner should be based solely on the fact that he had an office established at an unauthorized place and under an improper name. These are minor infractions and warrant only a nominal penalty.