480 A.2d 1141

**Donald B. WILKINS**

v.

**George HEEBNER and B & K Industries, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued March 27, 1984.

Filed July 13, 1984.

Reargument Denied Sept. 18, 1984.

Petition for Allowance of Appeal Denied Feb. 25, 1985.

492

James F. Mangan, Philadelphia, for appellants.

Ronald N. Rutenberg, Philadelphia, for appellee.

Before BROSKY, WIEAND and McEWEN, JJ.

WIEAND, Judge:

May a person who negotiates a lease for another but who lacks a real estate broker's license maintain an action to recover a ten percent interest in a corporation allegedly promised to him as compensation for successful negotiation of the lease? We hold that such an action is barred by the provisions of the Real Estate Brokers License Act.[1] An equity decree allowing recovery, therefore, must be reversed.

Donald Wilkins, a retired businessman, and George Heebner, who was actively engaged in the development of commercial real estate, were acquainted in the Philadelphia area but met again in Florida and became friends in 1971. In June, 1974, Heebner asked Wilkins to use his business acumen to obtain a favorable lease of undeveloped land in Abington Township, Montgomery County, which was then owned by Baederwood Center, Inc. Heebner offered monetary consideration for Wilkins' services, but Wilkins declined the offer because of the adverse effects he believed such a payment would have on his social security benefits and income tax liability. It was then agreed that if Wilkins were able to negotiate a favorable lease, he would be compensated by a ten percent interest in the commercial enterprise which Heebner intended to place upon the lease-

---

1. May 1, 1929, P.L. 1216, § 1 et seq., 63 P.S. § 431 et seq. (as amended), repealed effective February 19, 1980 and replaced by the Real Estate Licensing and Registration Act, February 19, 1980, P.L. 15, No. 9, § 101 et seq., 63 P.S. § 455.101 et seq. (as amended).

hold estate. Wilkins conducted extensive negotiations throughout 1974 and, despite competing interests, was able to negotiate terms of a ninety-nine year lease acceptable to Heebner and the owner. Heebner formed a wholly owned corporation, known as B & K Industries, Inc., which entered a lease agreement with the owner on or about December 24, 1974. A shopping center was constructed on the leased tract, which, in 1980, produced rentals of $276,000. Despite this success, Heebner has steadfastly refused to assign or transfer to Wilkins any shares of stock of B & K Industries, Inc.

Wilkins commenced an action in equity against Heebner and B & K Industries, Inc. to compel the assignment of a ten percent interest in B & K Industries, Inc. and a payment of ten percent of the profits realized by the corporate enterprise. The chancellor, although aware of the provisions of the Real Estate Brokers License Act which proscribe actions for compensation by unlicensed real estate brokers, concluded that the Act had no application because Wilkins and Heebner had been engaged in a joint venture. Heebner and B & K Industries appealed. We are constrained to agree with appellants that the evidence does not support the chancellor's finding of a joint venture. The evidence disclosed, rather, an agreement to compensate Wilkins for services rendered in negotiating a lease of real estate for Heebner. An action to enforce such an agreement is barred by statute.[2]

Section 16 of the Real Estate Brokers License Act of 1929, 63 P.S. § 446,[3] bars an action to recover compensation by an unlicensed "real estate broker" by the following language:

2. Because of this conclusion, we have not considered appellants' additional argument that appellee's action is also barred by the statute of frauds contained in Article 8 of the Uniform Commercial Code, 12A P.S. § 8-319, now repealed and reenacted at 13 Pa.C.S. § 8319.

3. This section was repealed and substantially reenacted, effective February 19, 1980, by the Real Estate Licensing and Registration Act, February 19, 1980, P.L. 15, No. 9, § 302, 63 P.S. § 455.302.

No action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person, copartnership, association or corporation was duly licensed hereunder as real estate broker at the time of the doing of such act or the rendering of such service.

See: *Kusche v. Vulcanized Rubber & Plastics Co.*, 416 Pa. 364, 206 A.2d 40 (1965); *Emerson C. Custis & Co. v. Penna. Salt Mfg. Co.*, 351 Pa. 148, 40 A.2d 481 (1945); *Verona v. Schenley Farms Co.*, 312 Pa. 57, 167 A. 317 (1933); *Boland v. Mullen*, 304 Pa.Super. 415, 450 A.2d 749 (1982); *Burke v. Israel*, 264 Pa.Super. 286, 399 A.2d 779 (1979); *Harrison v. Soffer*, 221 Pa.Super. 275, 289 A.2d 752 (1972).

A "real estate broker" is defined by section 2 of the Act, 63 P.S. § 432(a), as follows:

(a) The term "real estate broker" shall include all persons, copartnerships, associations, and corporations, foreign and domestic, who, for another and for a fee, commission, or other valuable consideration, shall sell, exchange, purchase, or rent, or shall negotiate the sale, exchange, purchase *or rental*, or shall offer or attempt to negotiate the sale, exchange, purchase, *or rental*, or shall hold himself or themselves out as engaged in the business of selling, exchanging, purchasing, or *renting* of any real estate, interest in real estate, the property of another, whether the same shall be located within the State of Pennsylvania, or elsewhere, or shall collect or offer or attempt to collect rental for the use of real estate, the property of another ....

This language establishes, and appellee does not contend otherwise, that one who, for a fee or other consideration, negotiates a lease on behalf of another is a real estate broker required by statute to be licensed. See generally:

*Burke v. Israel, supra; Kachulis v. George,* 42 D. & C.2d 617 (1967). If Wilkins were part of a joint venture, however, his negotiations would not have been conducted "for another," and the licensing provisions of the statute would have had no application. See and compare: *Ludington v. Shelley,* 2 D. & C.2d 404 (1954). See also and compare: *Meitner v. State Real Estate Commission,* 1 Pa.Cmwlth. 426, 275 A.2d 417 (1971). In such event, each joint venturer would have been both an agent for and a principal in the joint venture. *Gold & Co. v. Northeast Theater Corp.,* 281 Pa.Super. 69, 73 n. 1, 421 A.2d 1151, 1153 n. 1 (1980).

■■■ What constitutes a joint venture is a question of law; but whether a joint venture exists is generally a question of fact. *Keeler v. International Harvester Used Truck Center,* 317 Pa.Super. 244, 246, 463 A.2d 1176, 1178 (1983); 46 Am.Jur.2d Joint Ventures § 7. The chancellor in this case found that the parties had formed a joint venture. We will disturb that finding only if the record fails to support it. See: *Frowen v. Blank,* 493 Pa. 137, 142, 425 A.2d 412, 415 (1981); *Chatham Communications, Inc. v. General Press Corp.,* 463 Pa. 292, 297, 344 A.2d 837, 840 (1975); *Hopkins v. Stepler,* 315 Pa.Super. 372, 375, 461 A.2d 1327, 1328 (1983); *Lynch v. Hook,* 298 Pa.Super. 27, 30, 444 A.2d 157, 159 (1982).

■■■ An examination of the record in this case, however, does fail to reveal evidentiary support for the chancellor's finding that the intention of the parties, as expressed in their agreement, was to engage in a joint venture. In *Snellbaker v. Herrmann,* 315 Pa.Super. 520, 462 A.2d 713 (1983), we said:

A joint venture is not a status created or imposed by law; it is a relationship voluntarily assumed and arising wholly from contract. 2 Williston on Contracts 557, § 318A (3rd ed. 1959). Whether persons have engaged in it must depend primarily upon their intention as expressed in their agreement and the construction they have placed upon it. *"To constitute a joint venture certain factors are essential: (1) each party to the*

*venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction." McRoberts v. Phelps, 391 Pa. 591, 599, 138 A.2d 439, 443–444 (1958).* A joint venture partakes in many ways of a partnership, the principal difference being that it usually, though not necessarily, applies to a single transaction instead of being formed for the conduct of a continuing business. *West v. Peoples First National Bank & Trust Co., 378 Pa. 275, 281–282, 106 A.2d 427, 431 (1954).*

*Id.*, 315 Pa.Superior Ct. at 526, 527, 462 A.2d at 716 (emphasis added). In Pennsylvania, the law is clear that in order for a joint venture to come into existence, there must be a showing of a joint proprietary interest *and* a right of mutual control of the subject matter of the enterprise. *Beavers v. West Penn Power Co.*, 436 F.2d 869, 873 (3rd Cir.1971) (Pennsylvania law); *Tax Review Board v. Green*, 409 Pa. 448, 452, 187 A.2d 572, 574 (1963); *Waldman v. Shoemaker*, 367 Pa. 587, 591–592, 80 A.2d 776, 778 (1951); *McRoberts v. Phelps, supra* 391 Pa. at 599 & n. 13, 138 A.2d at 443–444 & n. 13; *Keeler v. International Harvester Used Truck Center, supra* 317 Pa.Super. at 247, 463 A.2d at 1178; *Snellbaker v. Herrmann, supra* 315 Pa.Super. at 526, 462 A.2d at 716. See also: *Nelson v. Serwold*, 687 F.2d 278, 282 (9th Cir.1982); *Sherrier v. Richard*, 564 F.Supp. 448, 457 (S.D.N.Y.1983); *Crest Construction Co. v. Insurance Co. of North America*, 417 F.Supp. 564, 569 (W.D.Okla.1976); *Moore v. Merchants & Planters Bank*, 434 So.2d 751, 753 (Ala.1983); *Northern Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1187 (Alaska 1977); *Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 540, 647 P.2d 1127, 1138, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *First National Bank of Madi-*

*son v. Vason,* 164 Ga.App. 309, 310–311, 297 S.E.2d 85, 87 (1983); *Palin Mfg. Co. v. Water Technology, Inc.,* 103 Ill.App.3d 926, 932, 59 Ill.Dec. 553, 558, 431 N.E.2d 1310, 1315 (1982); *Cupit v. Grant,* 425 So.2d 847, 850 (La.Ct.App. 1982); *Shain Investment Co. v. Cohen,* 15 Mass.App. 4, 8–10, 443 N.E.2d 126, 130 (1982); *Delgado v. Lohmar,* 289 N.W.2d 479, 482 (Minn.1980). Without evidence of a shared proprietary interest and right of control, there can be no joint venture. If proprietary control is vested in only one of two parties, the other may be an agent or an employee of the former, but there is no joint venture. See: *Tax Review Board v. Green, supra* 409 Pa. at 452, 187 A.2d at 574; *Waldman v. Shoemaker, supra* 367 Pa. at 591–592, 80 A.2d at 778.

■ In the instant case, there is not one iota of evidence that Wilkins and Heebner shared a joint proprietary interest in or right of control over the leasehold estate. Although it was agreed that Wilkins should receive a share of the profits from the development of the land for commercial purposes, the evidence is unequivocal that this agreement was intended to compensate Wilkins for his services and was not intended to create a right of control. Wilkins had been offered a monetary reward for his services, but he declined it for reasons personal to him. It was then agreed that he would receive a ten percent interest in the commercial enterprise being formed by Heebner in return for services if he were able to negotiate a lease satisfactory to Heebner. The form of this compensation for Wilkins' services did not thrust him into a position of control. Heebner employed Wilkins as an intermediary, as an agent; he conferred upon him no decision making power and no power to accept or reject the terms and conditions of the lease. The right of control and the proprietary interest in the negotiated lease remained constantly with Heebner. The right to receive a percentage of future profits was undoubtedly the consideration bargained for when Wilkins agreed to lend his expertise to Heebner. Wilkins' expectation of compensation in the form of an equity in Heebner's com-

mercial enterprise, however, did not create in Wilkins a proprietary interest or a joint right of control. See: *Waldman v. Shoemaker, supra,* 367 Pa. at 592, 80 A.2d at 778; *Marcus v. Grant,* 289 Pa. 1, 4, 137 A. 120, 121 (1927). Cf: *Meitner v. State Real Estate Commission, supra; Ludington v. Shelley, supra.*

The true nature of the relationship between the parties has been confirmed by admissions made by Wilkins in his pleadings and during his trial testimony. In paragraph 6 of his complaint, Wilkins asserted that "George Heebner authorized and employed plaintiff, Donald B. Wilkins, to negotiate on behalf of said Heebner for the long term rental of the said ... premises and agreed that in consideration for the successful performance of such services ... Wilkins would thereupon receive an interest of not less that 10% in any venture or lessee used by ... Heebner for the purpose of leasing these premises." At trial, Wilkins testified that he had been "employed by Mr. Heebner ... to negotiate a lease ... for Mr. Heebner."

We have reached a decision in this case only after careful consideration and searching reflection. We do not relish being part of a judicial determination which has the effect of enabling appellant to avoid a promise which he made and upon which appellee relied. The legislature has determined, however, that there are reasons of policy which require a uniform and strict enforcement of the licensing requirements imposed upon all who would perform the duties of a real estate broker. To insure such enforcement, the legislature has barred actions by unlicensed brokers to enforce agreements which may in every other respect be valid. If, in selected cases, the statutory ban against actions by unlicensed brokers seems too harsh and permitting of unjust results, the remedy rests with the legislature. Until the statutory ban is lifted or modified, the course of the judiciary is clear. We must enforce those laws which have been duly enacted by the legislative branch of government.

In this case, the statutory law is clear. Appellee, an unlicensed broker who negotiated a lease of real estate for

appellant, cannot use the courts to enforce appellant's promise to compensate him for services thus rendered. The decree of the chancellor, therefore, must be reversed and appellee's action dismissed.

It is so ordered.

McEWEN, J., files a dissenting opinion.

McEWEN, Judge, dissenting:

The excellent opinion of the majority very clearly reflects the awesome nature of the challenge here posed and quite persuasively concludes that the statutory law must here prevail over equity. I am unable, however, to accept the resulting unfairness or to endure the vision that any party is above the law and any just cause is beyond redress.

The special facts of this case make dissent instinctively easy. More difficult is the task of composing a rationale for what amounts to the singular judicial modification of a statute. I am mindful of the admonition of Benjamin Franklin that ours is a government of laws and not of men but have no doubt that Citizen Franklin would have been quite quick to devise a solution to this dilemma and may very likely have coined a proverb to do so. Thus encouraged, may I first note that the instant action is a proceeding in equity and then recall two accepted certainties. First, it is a principle of Biblical authenticity that fairness is the standard by which human affairs should be conducted and to which disputes should be addressed. Second, it is undisputed that a statute—whether designed to serve society in general or, as here, to protect a limited group—is but a codification of the measure of fairness or equity to be applied in particular situations or to specific events. I, therefore, would urge that when the statutory prescription for equity produces grave injustice, it must bow to pervading fairness. In other words, while Themis, the goddess of justice, dearly loves all of her children, she would be quick to concede that equity demands the most care and must, therefore, receive the most protection. Thus, while I embrace the statutory law, I must here favor fairness.

As a result, I would order that appellee be compensated in accordance with the agreement of the parties.