McEWEN, Judge,
dissenting:
While the statement of the majority provides a thorough analysis of and persuasive expression upon the issue presented, I am obliged to dissent for I agree with the distinguished Chancellor, Judge Alfred L. Taxis, Jr., that the accounts established by the decedent were merely convenience accounts and that the accounts should, therefore, be included in the distributable estate. The Chancellor specifically found that “the Declaration of Intent is in fact clear and convincing evidence that these accounts were convenience accounts and therefore they are and should be put into Sarah Heske’s estate for distribution under her Will”. I too am of the mind that there was clear and convincing evidence that the decedent never intended, at the time of the creation of the accounts or at any time thereafter, to make a gift of the accounts to appellee.
As a matter of law, I cannot agree with the conclusion of the en banc trial court that the letter of intent executed by the decedent, after consultation with counsel, was “insufficient” to establish her intent at the time of the creation of the accounts. Neither the statute nor case law compels such a conclusion. The purpose of Chapter 63 of the Probate Estate and Fiduciaries Code, 20 Pa. C.S. §§ 6301 et seq., which favors the surviving party over the estate of the decedent, was the elimination of uncertainty where a joint account existed.. In re Estate of Meyers, 434 Pa.Super. 165, -, 642 A.2d 526, 528 (1994). While the statute prescribes that there must be “clear and convincing evidence” (20 P.S. § 6304) of intent to create a convenience account, the purpose of the statute was assuredly not to defeat the well-settled and clearly expressed intent of the decedent.
Clear and convincing evidence is evidence which:
is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.
Matter of Chiovero, [524 Pa. 181, 187, 570 A.2d 57, 60 (1990) ]; Matter of Sylvester, [521 Pa. 300, 304, 555 A.2d 1202, 1203-04 (1989) ]; Matter of Braig, [520 Pa. 409, 413-14, 554 A.2d 493, 495 (1989) ]; JIRB v. Snyder, [514 Pa. 142, 151-53, 523 A.2d 294, 299 (1987) ].
j*í >|c s¡e ifc
The effects of conflicts in the evidence or corroboration of particular evidence will vary depending upon the credibility of the individuals involved, the degree of conflict or corroboration, and the importance of the point with respect to which the conflict or corroboration occurs. The existence of a conflict in the evidence with regard to a material fact, by itself, may preclude a finding that a charge has been sustained by clear and convincing evidence. See e.g. Matter of Johnson, [483 Pa. 227, 395 A.2d 1319 (1978) ]. On the other hand, there is no mechanistic corroboration requirement; rather, a charge could be sustained on the basis of the uncorroborated testimony of a single credible witness in an appropriate case. Compare In re McDonough, 296 N.W.2d 648, 692 (Minn.1980) (“no mechanistic corroboration requirement is necessary ... in fact, depending on its source, uncorroborated evidence may be more reliable than that remotely corroborated by a dubious source”)....
Matter of Larsen, 532 Pa. 326, 333, 616 A.2d 529, 532 (1992), cert. denied, — U.S.-, 114 S.Ct. 65, 126 L.Ed.2d 34 (1993) (emphasis in original). See, e.g.: Commonwealth v. Sam, 535 Pa. 350, 635 A.2d 603 (1993), cert. denied, — U.S. -, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994) (defendant asserting incompetency to stand trial has the burden of establishing his or her incompetency by clear *246 and convincing evidence); In re E.M., 538 Pa. 115, 620 A.2d 481 (1993) (existence of grounds necessary to terminate parental rights must be proven by clear and convincing evidence); Appeal of Gaus, 531 Pa. 133, 611 A.2d 696 (1992) (one who sets up the existence of a public highway has the burden of showing acceptance of the dedication by clear and convincing evidence); Moser v. DeSetta, 527 Pa. 157, 589 A.2d 679 (1991). I believe that appellant presented, under the facts of the instant case, the clear and convincing evidence necessary to overcome the statutory presumption of survivorship rights to the account in appellee.
Moreover, even if the statutory presumption operated, at the time that the decedent opened the accounts in October 1989, to impose a survivorship status upon the accounts, the statute does not declare that the presumption becomes permanent and beyond revocation. Appellee contended in the exceptions he filed to the decree nisi of the chancellor that the declaration of intent executed by the decedent on June 25, 1991, with the advice of counsel “could not apply to remove the survivorship rights of exceptant unless changes to the accounts themselves were made”. The court en banc ruled, in response to the exceptions filed by appellee, that:
While the “equities” favor distribution in accordance with Sarah W. Heske’s “Declaration of Intent”, the clear language of the Statute precludes such a distribution. Therefore, the critical time, for purposes of the Statute, is the “time of creation”. Had Sarah W. Heske desired to terminate Theodore Heske, Jr.’s survivorship rights to these accounts, Mrs. Heske should have pursued other options. She should have appeared at the bank(s), in person, to change the ownership, or if unable to do so, either by reason of physical disability or otherwise, she should have arranged for a bank official to come to her home to meet with her to change the ownership.
I disagree for, in my view, the decedent, once the accounts were opened, was free, as sole owner of the funds in the accounts, to revoke the survivorship status of the accounts by— inter alia, but only inter alia — changing the survivorship status of the record of the accounts at the banking institution — or by other clear expression of intent. I am of the mind that the decedent proceeded to just such a clear expression — a re-expression, as I see it — of intent by execution of a document, prepared by counsel pursuant to earlier delivered instructions, as a complement to a will which in itself was an implicit declaration that the accounts were but convenience accounts.
The Chancellor concluded that the Declaration of Intent established that the accounts were convenience accounts. The trial court en banc opined that the “equities” favor distribution in accordance with the “Declaration of Intent”. That sound instinct of the trial court en banc triggers recollection of observations expressed in dissent a decade ago:
First, it is a principle of Biblical authenticity that fairness is the standard by which human affairs should be conducted and to which disputes should be addressed. Second, it is undisputed that a statute ... is but a codification of the measure of fairness or equity to be applied in particular situations or to specific events. I, therefore, would urge that when the statutory prescription for equity produces grave injustice, it must bow to pervading fairness. In other words, while Themis, the goddess of justice, dearly loves all of her children, she would be quick to concede that equity demands the most care and must, therefore, receive the most protection.
Wilkins v. Heebner, 331 Pa.Super. 491, 500, 480 A.2d 1141, 1146 (1984) (McEwen, J., dissenting). Thus, it is that I conclude that the Declaration of Intent was clear and convincing evidence of decedent’s intent to create convenience accounts, or, at least, ample and abundant evidence of revocation and thereby rebuttal of any statutory presumption to the contrary. Thus, I would include the accounts in the distributable estate.